1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (SBN 249203)
ak@kazlg.com
Jason A. Ibey, Esq. (SBN: 284607)
Jason@kazlg.com
245 Fischer Avenue, Suite D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

(Other Attorneys on Signature Page)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAUL STEMPLE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>Plaintiff,<br><br>v.<br><br>**QC HOLDINGS, INC.,**<br><br>Defendant. | Case No: 12-CV-1997-CAB-WVG<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION PURSUANT TO FED. R. CIV. P. 23(B)(2) AND (B)(3)**<br><br>**Date:** March 21, 2014<br>**Time:** 1:30 p.m.<br>**Place:** Courtroom 4C<br>**Judge:** Hon. Cathy Ann Bencivengo<br><br>[Filed concurrently with Declaration of Abbas Kazerounian; Declaration of Joshua B. Swigart; Declaration of Todd M. Friedman; Declaration of Jeffrey A. Hansen; Declaration of Ilya Evdokimov; Declaration of Patrick M. Passarella; and Declaration of Paul Stemple] |

*(left margin, vertical text)* **Kazerouni Law Group, APC** Costa Mesa, California

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

I.     INTRODUCTION ................................................................................ 1

II.    PROCEDURAL BACKGROUND ....................................................... 2

III.   FACTUAL BASIS FOR CLASS CERTIFICATION ........................... 2

IV.    TELEPHONE CONSUMER PROTECTION ACT ............................. 5

V.     RULE 23 STANDARDS AND CLASS CERTIFICATION ANALYSIS .. 7

       A.     The Proposed Class of Third Parties Autodialed by QC
              Holdings Is Adequately Defined and Clearly Ascertainable .......... 8

              1.     **Step One: The universe of cellular telephone numbers
                     called within the class definition** ............................... 9

              2.     **Step Two: Identifying the Third Party numbers** ................ 10

              2.     **Step Three: Cross referencing to determine which third
                     party cellular telephone numbers were called** .................... 10

              4.     **Notice to the class members** ..................................... 11

       B.     Numerosity ................................................................ 12

       C.     Commonality ............................................................... 13

       D.     Typicality .................................................................. 16

       E.     Adequacy of Representation .............................................. 18

       F.     Hybrid Class Certification Should Be Granted ......................... 19

              1.     **Rule 23(b)(2)** ..................................................... 19

              2.     **Rule 23(b)(3)** ..................................................... 20

       G.     A Class Action Is Superior To Numerous Individual TCPA
              Actions ..................................................................... 24

VI.    CONCLUSION ................................................................... 25

Kazerouni Law Group, APC
Costa Mesa, California

# TABLE OF AUTHORITIES

**Cases**

*Abels v. JBC Legal Group, P.C.*,
   227 F.R.D. 541 (N.D. Cal. 2005) ........................................................................ 21

*Agne v. Papa John's Int'l*,
   286 F.R.D. 559 (W.D. Wash. 2012) ............................................................. 12, 15

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................................... 21

*Armstrong v. Davis*,
   275 F.3d 849 (9th Cir. Cal. 2001) ...................................................................... 16

*Bellows v. NCF Fin. Sys.*,
   2008 U.S. Dist. LEXIS 114451 (S.D. Cal. Sept. 5, 2008) .................................. 25

*Bruce v. Christian*,
   113 F.R.D. 554 (S.D.N.Y. 1986) ........................................................................ 12

*Califano v. Yamaki*,
   442 U.S. 682 (1979) ............................................................................................. 7

*CE Design Ltd. v. Cy's Crabhouse North, Inc.*,
   259 F.R.D. 135 (N.D. Ill. 2009) ......................................................................... 21

*Crown, Cork, & Seal Co., v. Parking*,
   462 U.S. 345 (1983) ............................................................................................. 1

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (U.S. 1974) ..................................................................................... 7

*Elliot v. ITT Corp.*,
   150 F.R.D. 569 (N.D. Ill. 1992) ........................................................................... 8

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) .................................................................. 13, 23

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................ 8

**Kazerouni Law Group, APC**
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

*Ellison v. Steve Madden, LTD,*
    No. 11-CV-5935-PSG (AGRx) (C.D. Cal. Sept. 25, 2012) ................................. 14

*Franklin v. City of Chicago,*
    102 F.R.D. 944 (N.D. Ill. 1984) ......................................................................... 13

*General Telephone Co. of Southwest v. Flacon,*
    457 U.S. 147 (1982) ............................................................................... 8, 13, 21

*G.M. Sign, Inc. v. Finish Thompson, Inc.,*
    2009 U.S. Dist. LEXIS 73869 (N.D. Ill. Aug. 20, 2009).................................... 22

*G.M. Sign, Inc. v. Group C Communs., Inc.,*
    2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010) .................................... 24

*Grant v. Capital Management Services, L.P.,*
    2011 WL 3874877 (9th Cir. Sept. 2, 2011) ......................................................... 6

*Gulf Oil Co. v. Bernard,*
    462 U.S. 89 (1981) ............................................................................................... 1

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. Cal. 1988) ................................................. 13, 18, 21, 24

*Hanon v. Dataproducts Corp.,*
    976 F.2d 497 (9th Cir. 1992)..................................................................... 7, 16, 18

*Harris v. Circuit City Stores, Inc.,*
    2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008)...................................... 16

*Holtzman v. Turza,*
    2009 U.S. Dist. LEXIS 95620 (N.D. Ill. Oct. 14, 2009) .................................... 16

*Iniguez v. CBE Group,*
    2013 U.S. Dist. LEXIS 127066 (E.D. Cal. Sept. 5, 2013) ................................... 5

*In re Adobe Sys., Inc. Sec. Litig.,*
    139 F.R.D. 150 (N.D. Cal. 1991)......................................................................... 7

*In re Pacific-Atlantic Trading Co.,*
    64 F.3d 1292, 1302 (9th Cir. 1995).................................................................... 5

**Kazerouni Law Group, APC**
Costa Mesa, California

*Irwin v. Mascott,*
    2001 U.S. Dist. LEXIS 3285 (N.D. Cal. Feb. 27, 2001) ........................ 4

*Karen S. Little, L.L.C. v. Drury Inns, Inc.,*
    306 S.W.3d 577 (Mo. Ct. App. 2010).................................................. 1

*Lee v. Stonebridge Life Ins. Co.,*
    2013 U.S. Dist. LEXIS 19774 (N.D. Cal. Feb. 12, 2013) ............... passim

*Lemieux v. v. Schwan's Home Serv.,*
    2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013) ............. passim

*Lo v. Oxnard European Motors, LLC,*
    2011 U.S. Dist. LEXIS 144490 *5 (S.D. Cal. Dec. 15, 2011) ........... 13

*Lusskin v. Seminole Comedy, Inc.,*
    2013 U.S. Dist. LEXIS 86192 (S.D. Fla. June 19, 2013) .................... 6

*Maier v. J. C. Penney Corp.,*
    2013 U.S. Dist. LEXIS 84246, (S.D. Cal. June 13, 2013) ................... 6

*Manno v. Healthcare Revenue Recovery Group, LLC,*
    2013 U.S. Dist. LEXIS 52620 (S.D. Fla. Mar. 26, 2013).............. 8, 23

*McKenzie v. Fed. Express Corp.,*
    275 F.R.D. 290 (C.D. Cal. 2011) ...................................................... 8

*McPhail v. First Command Fin. Planning, Inc.,*
    247 F.R.D. 598 (S.D. Cal. 2007)....................................................... 4

*Messner v. Northshore Univ. HealthSystem,*
    669 F.3d 802 (7th Cir. Ill. 2012)..................................................... 21

*Meyer v. Portfolio Recovery Associates, LLC,*
    2012 WL 4840814 (9th Cir. Oct. 12, 2012)............................... passim

*Mims v. Arrow Fin. Servs. LLC,*
    132 S. Ct. 740 (U.S. 2012) ............................................................... 1

*Montgomery v. Rumsfield,*
    572 F.2d 250 (9th Cir. 1978)............................................................ 7

**Kazerouni Law Group, APC**
Costa Mesa, California

*Moreno v. Autozone, Inc.,*
   251 F.R.D. 417 (N.D. Cal. 2008)........................................................ 9

*Moser v. F.C.C.,*
   46 F.3D 970  (9th Cir. 1995)........................................................... 5

*Murray v. GMAC Mortgage Corp.,*
   434 F.3d 948 (7th Cir. 2006)..........................................................24

*Negrete v. Allianz Life Ins. Co. of N. Am.,*
   238 F.R.D. 482 (C.D. Cal. 2006) .....................................................11

*Nelson v. Santander Consumer United States,*
   2013 U.S. Dist. LEXIS 40799 (W.D. Wisc. March 8, 2013) ............................. 5

*Phillips Petroleum v. Shutts,*
   472 U.S. 797 (1985) ................................................................... 1

*Robbins v. Coca-Cola-Company,*
   2013 U.S. Dist. LEXIS 72725 (S.D. Cal. May 22, 2013) ................................. 6

*Santillan v. Ashcroft,*
   No. C 04-2686 MHP, U.S. Dist. LEXIS 20824 (N.D. Cal. Oct. 12, 2004) .......... 9

*Satterfield v. Simon & Schuster, Inc.,*
   569 F.3d 946 (9th Cir. 2009)........................................................... 6

*Schwartz v. Upper Deck Co.,*
   183 F.R.D. 672 (S.D. Cal. 1999)....................................................... 8

*Shaw v. BAC Home Loans Servicing, LP,*
   2011 U.S. Dist. LEXIS 149416 (S.D. Cal. Dec. 29, 2011) ................................ 8

*Sherman v. Yahoo! Inc.,*
   2014 U.S. Dist. LEXIS 13286, *16 (S.D. Cal. Feb. 3, 2014) ............................14

*Spencer v. Beavex, Inc.,*
   2006 U.S. Dist. LEXIS 98565 S.D. Cal. Dec. 15, 2006)..................................12

*Staton v. Boeing Co.,*
   327 F. 3d 938 (9th Cir. 2003)................................................... 12, 18

*Stemple v. QC Holdings, Inc.,*
  2013 U.S. Dist. LEXIS 99582 (S.D. Cal. June 17, 2013) ..................................... 6

*St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,*
  2007 U.S. Dist. LEXIS 11650 (W.D. Wash. Feb. 16, 2007)............................... 1

*Swanson v. Mid Am., Inc.,*
  2013 U.S. Dist. LEXIS 19774 (N.D. Cal. Feb. 12, 2013) .................................. 14

*Thomasson v GC Servs., Ltd. P'ship,*
  275 F.R.D. 309 (S.D. Cal. 2011)................................................................. 25

*Thompson v. Clear Channel Communs., Inc. (In re Live Concert Antitrust Litig.),*
  247 F.R.D. 98 (C.D. Cal. 2007) ................................................................ 7

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227 (9th Cir. 1996)............................................................... 21, 23

*Wagner v. Nutrasweet Co.,*
  95 F.3d 527 (7th Cir. Ill. 1996) ............................................................ 16

*Wal-Mart Stores, Inc. v. Dukes,*
  131 S. Ct. 2541 (U.S. 2011) ......................................................... passim

*Weeks v. Bareco Oil Co.,*
  125 F.2d 84(7th Cir. Ill. 1941) ............................................................ 25

*Westways World Travel, Inc. v. AMR Corp.,*
  218 F.R.D. 223 (C.D. Cal. 2003) ......................................................... 24

*Wolin v. Jaguar Land Rover N. Am., LLC,*
  617 F.3d 1168 (9th Cir. 2010)............................................................. 21

*Wolph v. Acer America Corp.,*
  272 F.R.D. 477 (N.D. Cal. 2011) ......................................................... 8

*Yoshioka v. Charles Schwab Corp.,*
  2011 U.S. Dist. LEXIS 147483 (N.D. Cal. Dec. 22, 2011) ................... 19, 20

**Statutes**

47 U.S.C. § 227 .................................................................................... 1

**Kazerouni Law Group, APC**
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

47 U.S.C. § 227(a)(1) ..........................................................................5

47 U.S.C. § 227(b)(1)(A) .....................................................................5

47 U.S.C. § 227(b)(1)(A)(iii) .........................................2, 4, 5, 6, 23

47 U.S.C. § 227(b)(3)(A) .....................................................................7

47 U.S.C. § 227(b)(3)(B) .................................................................7, 24

**Rules**

Fed. R. Civ. P. 23 ..........................................................................passim

Fed. R. Civ. P. 23(a) .....................................................................passim

Fed. R. Civ. P. 23(a)(1) ....................................................................12

Fed. R. Civ. P. 23(a)(2) ................................................................13, 16

Fed. R. Civ. P. 23(a)(3) ....................................................................16

Fed. R. Civ. P. 23(a)(4) ....................................................................18

Fed. R. Civ. P. 23(b) ................................................................7, 19, 24

Fed. R. Civ. P. 23(b)(2) ...............................................................passim

Fed. R. Civ. P. 23(b)(3) ...............................................................passim

Fed. R. Civ. P. 23(g)(1)(B) ..............................................................18

**Other**

5 James Wm Moore,
    *Moore's Fed. Prac.* § 23.21 (2001) ..........................................9

7A Wright, Miller & Kane,
    *Fed. Prac. & Proc. Civil 3d* § 1760 (3 ed. 2005) ....................9

C. Wright, A Miller & M. Kane,
  *Federal Prac. & Proc. Civil 2d* § 1754 (1986) ..................................... 7

C. Wright, et al.,
  *Federal Practice & Procedure* § 1778 (2d ed. 1986) ........................................... 21

H. Newberg,
  *Newberg on Class Actions* § 1115(b) (1st Ed. 1977) ......................................... 16

**Kazerouni Law Group, APC**
Costa Mesa, California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Kazerouni Law Group, APC**
Costa Mesa, California

## I.   INTRODUCTION

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") is "aimed at protecting recipients from the intrusion of receiving unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).  Indeed, the U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress. *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (U.S. 2012).

The purpose of a class action is to promote judicial economy by avoiding duplicative suits against the same defendant, and to protect the rights of persons who may not be able to assert their claims on an individual basis. *Crown, Cork, & Seal Co. v. Parking*, 462 U.S. 345 (1983). As the United States Supreme Court has observed, "[c]lass actions serve an important function in our system of civil justice." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99 (1981). "Class actions also may permit the plaintiffs to pool claims which would be uneconomical to litigate individually." *Phillips Petroleum v. Shutts*, 472 U.S. 797, 809 (1985).

According to the court in *Karen S. Little, L.L.C. v. Drury Inns, Inc.*, 306 S.W.3d 577, 584 n. 5 (Mo. Ct. App. 2010), approximately fifty courts have certified TPCA class actions since 2010. This is not including the recent TCPA class actions certified in California District Courts. *See Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032 (S.D. Cal. Sept. 5, 2013) (TCPA action involving calls to cell phones); *Lee v. Stonebridge Life Ins. Co.*, 2013 U.S. Dist. LEXIS 19774 (N.D. Cal. Feb. 12, 2013 (TCPA action involving text messages to cell phone).

This putative class action centers on a few simple allegations which, if found to be true, constitute numerous violations of the TCPA. Paul Stemple ("Plaintiff") alleges that defendant QC Holdings, Inc. ("QC Holdings" or "Defendant") placed automated and/or prerecorded calls to the cellular telephone of Plaintiff and putative class members (who were not account holders of QC Holdings) without their prior

express consent, in violation of § 227(b)(1)(A)(iii).  Claims under the TCPA, such as the ones in this case, make ideal class actions because the putative class members suffer the same injury in virtually the same manner.  Therefore, Plaintiff moves this Court to certify a TCPA class action against Defendant consisting of 14,635 class members who were called on their cellular telephones with a California area code, and Plaintiff submits that the prerequisites of Fed. R. Civ. P. 23(a) are met, and that the requirements of Fed. R. Civ. P. 23(b)(2) and (b)(3) are also satisfied.

## II.     PROCEDURAL BACKGROUND

Plaintiff filed the Complaint in this action on August 13, 2013 (Dkt. No. 1). Defendant filed an Answer on October 25, 2012 (Dkt. No. 5) and an Amended Answer on the same day (Dkt. No. 7).  The Court approved the parties' stipulated protective order on May 6, 2013 (Dkt. No. 20).  On June 17, 2012, the Court issued a ruling on the parties' discovery dispute (Dkt. No. 21). The case was stayed from August 14, 2013 through December 20, 2013 while the parties attempted to resolve the case by private mediation (*see* Dkt. Nos. 31-34).  The Court set deadlines for a motion for class certification on January 8, 2014 (Dkt. No. 36).

## III.    FACTUAL BASIS FOR CLASS CERTIFICATION

Defendant is a publically traded short-term lender of consumer credit with approximately 475 nationwide locations and approximately 1,500 employees. Deposition of Darrin McCarty ("McCarty Depo."), 18:19-22; 20:11-21:3. Having never provided prior express consent to call Plaintiff's cellular telephone number, and also never providing Plaintiff's cellular telephone number to Defendant (*see* McCarty Depo., 74:4-9; 90:7-12; Compl. at ¶¶ 9-10), Defendant began calling Plaintiff's cellular telephone number in an attempt to collect an alleged debt allegedly owed to someone else (McCarty Depo., 73:5-74:17).  According to Defendant's representative, pursuant to Fed. R. Civ. P. 30(b)(6), Darrin McCarty,[1]

---

[1] Darrin McCarty works for Defendant as the Director of Recoveries." McCarty Depo., 10:17-25; 13:24-14:1.

Kazerouni Law Group, APC
Costa Mesa, California

Kazerouni Law Group, APC
Costa Mesa, California

Defendant used an ATDS and/or an artificial or prerecorded[2] message (Compl., ¶¶ 12-13; 42:12-43:1; 85:10-12) to call Plaintiff's cellular telephone number.[3] *See* McCarty Depo., 38:6-19; 41:16-23; Defendant's Response to Request for Admission No. 14 (Exhibit D to Kazerounian Decl.); Defendant's Response to Interrogatory Nos. 5, 7, 8 and 14 (Exhibit C to Kazerounian Decl.); *see also* Declaration of Paul Stample ("Stemple Decl."), ¶ 3. Someone other than Plaintiff, ██████████, had provided Plaintiff's cellular telephone number to Defendant on a customer application under the "Employment" field (McCarty Depo., 35:14-37:5; 73:5-74:17; 90:7-12; *see also* Compl., ¶ 11), which is a third party contact field (hereinafter referred to as "Third Parties"). To date, Plaintiff has received approximately twelve such calls (Compl. ¶ 16; Defendant's Response to Interrogatory Nos. 5, 7, 8 and 14 (Exhibit C to Kazerounian Decl.)). These calls did not constitute calls for emergency purposes (*id.* at ¶ 17), as they were debt collection calls. These calls were without Plaintiff's prior express consent (*see id.* at ¶¶ 18, 19 and 27; Stemple Decl., ¶¶ 4-6).

Defendant also called 14,635 persons similarly situated. *See* McCarty Depo. 38:24-39:8; 67:1-12; *see generally* Compl., ¶¶ 20-31; *see also* Declaration of Joshua B. Swigart ("Swigart Decl."), 12; Declaration of Ilya Evdokimov ("Evdokimov Decl."), ¶ 7. ███████████████████████████████████████████████████ ███████████████████████████████████████████ McCarty Depo., 37:22-38:2; 38:15-39:8; 70:6-71:13; 73:1-4.[4] ███████████████████████████

---

[2] Defendant calls persons in an attempt to collect a debt ███████████████ ██████████████. McCarty Depo., 43:13-16; *see also id.* at 44:21-23; 54:6-10.

[3] See, for example, Pl.'s Response to Interrogatory No. 3 (Exhibit E to Kazerouniam Decl.); *see also id.* at Nos. 1 and 2.

[4] Although Defendant has already admitted lack of prior express consent to call those persons whose telephone numbers were listed in the third party fields of the California customer loan applications, the prior express consent issue is common to the entire class (*see* Section V.F.2., *infra*), and is a merits issue not to be resolved on a motion for class certification.

1  ███████████████████████████████████ (*see*

2  McCarty Depo., 32:8-35:13) ███████████████████████

3  ███████████████ (*see id.* at 21:13-19; 22:14-18; 23:14-20; 24:12-13;

4  25:10-29:12). Also, ████████████████████████████████

5  █████████████████████████████████████████████

6  ████████████████████████████. McCarty Depo., 68:12-18.

7  █████████████████████████████████████████

8  ████████████████. *Id.* at 74:25-75:12.

9       Therefore, based upon these facts and allegations in the Complaint, Plaintiff

10  believes that a 47 U.S.C. § 227(b)(1)(A)(iii) class is justified here, consisting of:

11       All persons whose 10-digit cellular telephone numbers

12       with a California area code were listed by an account

13       holder in the Employment and/or Contacts fields of a
     California customer loan application produced to QC

14       Holdings, Inc. (documents produced Bates QCHI000656 -

15       QCHI132994), which were called by QC Holdings, Inc.
     using an automatic telephone dialing system and/or an

16       artificial or prerecorded voice for the purpose of collecting

17       or attempting to collect an alleged debt from the account
     holder, between August 13, 2008 and August 13, 2012.

18       This definition is different than the definition proposed in the Complaint at ¶

19  21,[5] and is limited to persons with 10-digit cellular telephone numbers with a

20  California area code whose cellular telephone numbers were submitted on a

21  California customer loan application by a customer of QC Holdings and called by

22  Defendant.  Based upon the allegations in the Complaint, the considerable evidence

23  obtained thus far, and evidence that will likely be obtained through further discovery,

24  class certification of Plaintiff's single TCPA claim is appropriate.

25

26  [5] The class definition can be modified prior to certification. *See Irwin v. Mascott*, 2001 U.S. Dist. LEXIS 3285, *12 (N.D. Cal. Feb. 27, 2001); *McPhail v. First*

27  *Command Fin. Planning, Inc.*, 247 F.R.D. 598, 608 (S.D. Cal. 2007); *see also Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032, *20 (S.D. Cal.

28  Sept. 5, 2013) (court modified class definition for class certification purposes).

## IV.   TELEPHONE CONSUMER PROTECTION ACT

Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America, as the TCPA combats the threat to privacy being caused by the automated practices, stating it is unlawful:

> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or an artificial or prerecorded voice**—. . .
>
> (iii) **to any telephone number assigned to a** … **cellular telephone service** …

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

This section of the TCPA prohibits the use of an "automatic telephone dialing system"[6] or an "artificial or prerecorded voice" to make the calls. *Iniguez v. CBE Group*, 2013 U.S. Dist. LEXIS 127066, *10-11 (E.D. Cal. Sept. 5, 2013) ("Since the applicable section is written in the disjunctive, a violation may occur if any one of an automated telephone dialing system, an artificial voice, or a prerecorded voice is used to make the call.) (citing *In re Pacific-Atlantic Trading Co.*, 64 F.3d 1292, 1302 (9th Cir. 1995)). To demonstrate a TCPA violation, Plaintiff need only show that Defendant (1) placed a call using an automatic telephone dialing system and/or an artificial or prerecorded voice; (2) to any telephone number assigned to a cellular telephone service. 47 U.S.C. § 227(b)(1)(A)(iii).  Section 227(b)(1)(A) of the TCPA expressly applies to "any call" made using an ATDS. 47 U.S.C. § 227(b)(1)(A).

The Ninth Circuit has held that this section of the TCPA should be analyzed as a content-neutral regulation. *Moser v. F.C.C.*, 46 F.3d 970, 973 (9th Cir. 1995).

---

[6] The TCPA defines an ATDS to mean "equipment which has the capacity— (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers" (47 U.S.C. § 227(a)(1)); *see also Nelson v. Santander Consumer United States*, 2013 U.S. Dist. LEXIS 40799, *27 (W.D. Wisc. March 8, 2013) ("the question is not how the defendant made a particular call, but whether the system it used had the 'capacity' to make automated calls"). Defendant has already admitted to using an ATDS. McCarty Depo., 42:6-11.

Kazerouni Law Group, APC
Costa Mesa, California

*See* also *Robbins v. Coca-Cola-Company*, 2013 U.S. Dist. LEXIS 72725, *6 (S.D. Cal. May 22, 2013) (emphasis added) ("the wording of the statute is expansive and content neutral."); *Lemieux v. Schwan's Home Serv.*, 2013 U.S. Dist. LEXIS 127032, *20 (S.D. Cal. Sept. 5, 2013) (Section 227(b)(1)(A)(iii) does not make a distinction between marketing or non-marketing calls; *Lusskin v. Seminole Comedy, Inc.*, 2013 U.S. Dist. LEXIS 86192, *4-6 (S.D. Fla. June 19, 2013) ("In enacting the TCPA, Congress considered evidence that individuals 'consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy.'") (emphasis added).

A single call to a cell phone using an ATDS or with an artificial or prerecorded voice without prior express consent violates the TCPA. *See generally Satterfield*, 569 F.3d at 956; *see also Lemieux*, 2013 U.S. Dist. LEXIS 127032 at *20 (certifying a TCPA class action where one of the named plaintiff allegedly received a single autodialed call on his cell phone); *Maier v. J. C. Penney Corp.*, 2013 U.S. Dist. LEXIS 84246, *11 (S.D. Cal. June 13, 2013) (denying motion to dismiss where plaintiff alleged she received a single unlawful text message).

The Ninth Circuit has defined "express consent" to mean "clearly and unmistakably stated" consent (*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. 2009)). Prior express consent is an affirmative defense for which the defendant bears the burden of proof. *See Grant v. Capital Management Services, L.P.*, 2011 WL 3874877, at *1, n.1. (9th Cir. Sept. 2, 2011) ("express consent is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof"); *Stemple v. QC Holdings, Inc.*, 2013 U.S. Dist. LEXIS 99582, *19 (S.D. Cal. June 17, 2013) ("Prior express consent is an affirmative defense and thus Defendant bears the burden of proof." (citing *Grant*, 449 Fed. Appx. 598 at fn. 1).

The TCPA sets statutory damages at $500 per negligent violation and $1,500 in treble damages for a knowing or willful violation, and provides for injunctive

Kazerouni Law Group, APC
Costa Mesa, California

relief prohibiting further such calls. 47 U.S.C. § 227(b)(3)(A-B).

## V.   RULE 23 STANDARDS AND CLASS CERTIFICATION ANALYSIS

Rule 23 governs the certification of class actions and has as main objectives the efficient resolution of the claims or liabilities of many individuals in a single action, as well as the elimination of repetitious litigation and possibly inconsistent adjudication. *Califano v. Yamaki*, 442 U.S. 682, 700-01 (1979); C. Wright, A. Miller & M. Kane, Federal Prac. & Proc. Civil 2d at § 1754 (1986).  District courts are afforded broad discretion in determining whether an action should be certified. *Montgomery v. Rumsfeld*, 572 F.2d 250, 255 (9th Cir. 1978).  Rule 23 outlines a two-step process for determining whether class certification is appropriate. Rule 23(a) sets forth four conjunctive prerequisites that must be met for any class: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

These requirements are referred to as numerosity, commonality, typicality, and adequacy. *See Thompson v. Clear Channel Communs., Inc. (In re Live Concert Antitrust Litig.)*, 247 F.R.D. 98, 105 (C.D. Cal. 2007). Once subdivision (a) is satisfied, the party seeking certification must demonstrate that the action falls into one of three categories under Rule 23(b). *See In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 153 (N.D. Cal. 1991). A plaintiff must show compliance with the prerequisites of Rule 23(a) under a rigorous analysis. *See Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2552 (U.S. 2011). "In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (U.S. 1974) (emphasis added).

"[I]t is well established that for purposes of class certification, the moving

Kazerouni Law Group, APC
Costa Mesa, California

party does not need to establish a likelihood of prevailing on the merits." *McKenzie v. Fed. Express Corp.*, 275 F.R.D. 290, 297 (C.D. Cal. 2011). "Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim…" *General Telephone Co. of Southwest v. Falcon*, 457 U.S 147, 160 (1982).  "[I]t remains relatively clear an ultimate adjudication on the merits of plaintiffs' claims is inappropriate, and any inquiry into the merits must be strictly limited to evaluating plaintiffs' allegations to determine whether they satisfy Rule 23." *Lee v. Stonebridge Life Ins. Co.*, 2013 U.S. Dist. LEXIS 19774, *7 (N.D. Cal. Feb. 12, 2013) (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 n.8 (9th Cir. 2011)).

Class actions are essential to enforce laws protecting consumers. The Ninth Circuit recently affirmed preliminary approval of a TCPA injunctive relief class in *Meyer v. Portfolio Recovery Associates, LLC*, 2012 WL 4840814 (9th Cir. Oct. 12, 2012). District courts have recently certified similar TCPA class actions. *See Lemieux*, 2013 U.S. Dist. LEXIS 127032; *Lee v. Stonebridge Life Ins. Co.*, 2013 U.S. Dist. LEXIS 19774, *11-12 (N.D. Cal. Feb. 12, 2013; *Manno v. Healthcare Revenue Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 52620 (S.D. Fla. Mar. 26, 2013).

### A.    The Proposed Class of Third Parties Autodialed by QC Holdings Is Adequately Defined and Clearly Ascertainable

"Although there is no explicit requirement concerning the class definition in FRCP 23, courts have held that the class must be adequately defined and clearly ascertainable before a class action may proceed." *Schwartz v. Upper Deck Co.*, 183 F.R.D. 672, 679-80 (S.D. Cal. 1999) (quoting *Elliott v ITT Corp.*, 150 F.R.D. 569, 573-74 (N.D. Ill. 1992)). "The class definition 'must be sufficiently definite so that it is administratively feasible to determine whether a particular person is a class member.'" *Shaw v. BAC Home Loans Servicing, LP*, 2011 U.S. Dist. LEXIS 149416, 4-5 (S.D. Cal. Dec. 29, 2011) (citing *Wolph v. Acer America Corp.*, 272 F.R.D. 477,

*Kazerouni Law Group, APC*
Costa Mesa, California

482 (N.D. Cal. 2011)).[7] "[T]he identity of class members must be ascertainable by reference to objective criteria." 5 James Wm Moore, Moore's Fed. Prac., § 23.21[1], p. 23-57 (2001). A class may be certified even though the court cannot identify every potential member at the moment of certification. *See Santillan v. Ashcroft*, No. C 04-2686 MHP, 2004 U.S. Dist. LEXIS 20824 (N.D. Cal. Oct. 12, 2004).[8]

Class membership here may be readily determined by objective criteria, namely: (i) all persons; (ii) to whom QC Holdings; (ii) placed any call (iii) using an ATDS and/or an artificial or prerecorded voice; (iv) on their 10-digit cellular telephone with a California area code; (v) for the purpose of collecting or attempting to collect an alleged debt; (vi) from an account holder who listed the third party telephone number in the Employment and/or Contacts fields of a California customer loan application produced to QC Holdings; (vii) between August 13, 2008 and August 13, 2012. Such objective information can be readily determined from Defendant's own records produced and analyzed.

### 1. Step One: The universe of cellular telephone numbers called within the class definition

███████████████████████████████████████████████████

████████████████████████. McCarty Depo., 74:25-75:12. QC Holdings has already internally scrubbed the list of its telephone calls to identify 105,805 unique cellular telephone numbers with California area codes called during the class period, which telephone numbers were provided on California customer loan applications to Defendant by customers of Defendant. *See* Kazerounian Decl., ¶ 7; Swigart Decl., ¶

---

[7] "A class is ascertainable if it identifies a group of unnamed plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify himself or herself as having a right to recover based on the description." *Moreno v. Autozone, Inc.*, 251 F.R.D. 417, 421 (N.D. Cal. 2008).

[8] As long as "*the general outlines of the membership* of the class are determinable at the outset of the litigation, a class will be deemed to exist." 7A Wright, Miller & Kane, Federal Practice & Procedure, Civil 3d § 1760 at 118 (3 ed. 2005) (italics added.)

Kazerouni Law Group, APC
Costa Mesa, California

7. QC Holdings has provided that information to Plaintiff's counsel through discovery. Swigart Decl., ¶ 7.  The universe of potential calls made to a cell phone with a California area code within the class period has been produced and they are identifiable. The class members that fit within the class definition are contained within this universe of telephone numbers produced.[9]

### 2.   Step Two: Identifying the Third Party numbers

QC Holdings has already provided Plaintiff's counsel with approximately 60,000 completed California customer loan applications, identified as Bates QCHI000656-QCHI132994,[10] which contain telephone numbers in the Employment and Contacts[11] fields (Swigart Decl., ¶¶ 7-9; Kazerounian Decl., ¶¶ 9-11), which are telephone numbers of Third Parties. These documents were provided to Plaintiff's technology consultant, Ilya Evdokimov, who works for Electronic & Speech Discovery, Inc. ("E&S"), and E&S then extracted the telephone numbers in the Employment and Contacts field and returned the results in a MS Excel file. *See* Evdokimov Decl. at ¶¶ 3-7; Swigart Decl., ¶¶ 11-12.

### 3.   Step Three: Cross referencing to determine which third party cellular telephone numbers were called

Once the MS Excel file was created based on all the phone numbers extracted from Employment and Contact sections of each California customer loan application produced, those telephone numbers were then compared with a separately produced electronic file containing known cellular telephone numbers called by Defendant (the numbers produced by Defendant as referenced in Step

---

[9] Although it is a merits issue, Plaintiff notes that Plaintiff's technology consultant, Jeffrey A. Hansen, can, readily and with 100% accuracy, determine call frequency. Declaration of Jeffrey A. Hansen, ¶¶ 3-4.

[10] *See* Exhibit F to Kazerounian Decl., ¶ 21.

[11] The Contacts field essentially requests reference information such as "nearest relative not living with you" and "Landlord." Kazerounian Decl., ¶ 10. There is a separate field for "Personal" information of the account applicant, which telephone numbers are not at issue in this case. *Id.*

Kazerouni Law Group, APC
Costa Mesa, California

One above). Evdokimov Decl. at ¶ 7. E&S electronically compared the manually extracted numbers from the customer applications, which included more than 262,000 telephone numbers, with the outbound dial list of 105,805 unique cellular telephone numbers called. E&S then obtained 18,203 matching numbers, with 14,635[12] 10-digit matches (i.e., phone numbers with area code) and 3,568 7-digit matches (i.e., the last 7 digits of the telephone number minus the area code). *See* Evdokimov Decl. at ¶¶ 3-7. E&S Discovery guarantees 99.95% accuracy based on Ilya Evdokimov's managing and performing similar data capture projects for over 15 years, as well as numerous case studies and similar projects. *Id.* at ¶ 7. Thus, Plaintiff has identified the exact number of affected class members, as there are 14,635 class members who were listed as an Employment or third party Contact who received a automated and/or prerecorded calls on their cell phone.

### 4.   Notice to the class members

To ensure adequate notice to the class members,[13] Plaintiff will employ the services of a call center to manually call the 14,635 telephone numbers at least three times with a script to be approved by the Court to advise them of their potential membership in the class, then send direct mail notice where possible, and give notice by publication as well. Kazerounian Decl., ¶ 29; Declaration of Patrick M. Passarella, ¶¶ 3-4. This can be achieved accurately and expeditiously.

Thus, not only may such methods plausibly[14] be used to identify putative class members, but Plaintiff has already *ascertained* the putative class through such methods. Plaintiff has already gone through the effort and expense to ascertain the

---

[12] Plaintiff has elected not to include in the class definition the 3,567 7-digit matching numbers that did not include the area code for the phone numbers.

[13] The complete customer applications contain, when filled out by Defendant's customer at the request for Defendant, name and address information for the putative class members whose numbers were placed in the Employment field. *See* Exhibit F to Kazerounian Decl., ¶ 21.

[14] *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 238 F.R.D. 482, 494-95 (C.D. Cal. 2006) ("plaintiffs need only show that their proposed methods are plausible.").

Kazerouni Law Group, APC
Costa Mesa, California

**Kazerouni Law Group, APC**
Costa Mesa, California

class members. The only thing left to do is provide proper class notice. Plaintiff, with 100% accuracy, identified all the unique cellular telephone numbers with a California area code listed an Employment or third party Contact number associated with California customer loan applications called by Defendant without prior express consent during the class period. Further, all the class members actual identities may be determined by contacting them on their cellular telephone numbers by means of a call center to manually dial the 14,635 telephone numbers. The purpose of calling each class members is to obtain address information in order to send them direct mail notice. In any event, class notice is more appropriately addressed after class certification has been granted. *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 566 (W.D. Wash. 2012).

Therefore, Plaintiff has more than adequately identified the general outlines of Class membership, and Plaintiff has already shown that it is administratively feasible for the parties to review documentation already provided by QC Holdings, which is a limited, basic inquiry made relatively simply through the use of technology.[15] Consequently, the class definition is adequately defined and class membership is clearly ascertainable, and an effective means of class notice exists.

**B.  Numerosity**

Under Rule 23(a), the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); *Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003). There is no magic number that satisfies the test of impracticability of joinder and thus each case stands on its own particular facts. *Bruce v. Christian*, 113 F.R.D. 554, 556 (S.D.N.Y. 1986). Plaintiff has more than satisfied the numerosity requirement in this case involving 14,635 class members (*see* Evdokimov Decl., ¶ 7; *see generally* Compl., ¶ 22), making over 14,000 separate

---

[15]  *See Spencer v. Beavex, Inc.*, 2006 U.S. Dist. LEXIS 98565, *19 (S.D. Cal. Dec. 15, 2006) ("[A] proposed class must be clearly defined so that it is administratively feasible for a court to determine whether a particular individual is a member.") (internal quotations omitted).

actions economically and judicially impracticable. *See Lemieux*, 2013 U.S. Dist. LEXIS 127032 at *15 (involving several thousands of persons called on their cell phone); *Lo v. Oxnard European Motors, LLC*, 2011 U.S. Dist. LEXIS 144490, *5 (S.D. Cal. Dec. 15, 2011) (involving 203 class members called on their cell phone).

## C.    Commonality

Rule 23(a)(2) requires that there be at least one common question of law or fact to certify a class. A class has sufficient commonality "if there are questions of fact and law which are common to the class" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1988) (quoting Fed. R. Civ. P. 23(a)(2)). Commonality focuses on whether certification will offer a more economical approach to resolving the underlying disputes than would individual litigation. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). "Plaintiffs need not demonstrate that all questions are common to the class; [as there need only be]…'a common core of salient facts coupled with disparate legal remedies within the class' are present." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 506 (N.D. Cal. 2012) (citing *Hanlon*, *supra*, *at* 1019-20).

Commonality requires that the "common contention is of such a nature that it is capable of classwide resolution--which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (U.S. 2011). Where questions of law involve "standardized conduct of the defendants towards members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement...is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). Class certification is appropriate where the "classwide proceeding [will] generate common answers apt to drive resolution of the litigation." *Dukes*, 131 S.Ct. at 2551.

Defendant here ███████████████

*Kazerouni Law Group, APC*
Costa Mesa, California

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████. *See* Compl., ¶ 26. Thus, there are several questions of law and fact common to the class members, such as Defendant's ██████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████. *See Ellison v. Steven Madden*, LTD, 11-CV-5935-PSG (AGRx) (C.D. Cal. Sept. 25, 2012) ("the material issue in the case, whether Defendant sent unsolicited, automated text message advertisements to class members, is a question that is common to the entire class. Therefore, the shared attributes of the claim would be the main focus of the litigation.")

The common questions of law and fact in this TCPA case include, but are not necessarily limited to: (i) all persons; (ii) to whom QC Holdings; (ii) placed any call (iii) using an ATDS and/or an artificial or prerecorded voice; (iv) to their cellular telephone with a California area code; (v) for the purpose of collecting or attempting to collect an alleged debt on a California customer loan; (vi) from an account holder who listed the telephone number in the Employment and/or Contacts fields of a California customer loan application produced to QC Holdings; (vii) between August 13, 2008 and August 13, 2012; (viii) and whether Defendant's policy and method of seeking consent from the borrower to call third parties amounts to prior express consent to call the third parties. Such objective information can be readily

---

[16] ████████████████████████████████████████ (McCarty Depo., 42:6-11), which constitutes an ATDS under the TCPA. *See Sherman v. Yahoo! Inc.*, 2014 U.S. Dist. LEXIS 13286, *16 (S.D. Cal. Feb. 3, 2014) ("A predictive dialer is considered an ATDS under the TCPA.").

[17] "To establish commonality, it is sufficient that Plaintiff allege that all class members received the same" call. *Swanson v. Mid Am, Inc.*, 186 F.R.D. 665, 668 (M.D. Fla. 1999).

**Kazerouni Law Group, APC**
Costa Mesa, California

determined using Defendant's own records and by public notice. *See Lemieux*, 2013 U.S. Dist. LEXIS 127032, *17-18 ("The Court finds there are question of law and fact common to the class, including: (1) whether Defendants used an ATDS or artificial/prerecorded voice, (2) to call (3) NutriSystem customers' cell phones, (3) for non-emergency purposes, and (4) without the customers' prior express consent."); *Agne v. Papa John's Int'l*, 286 F.R.D. 559, 567 (W.D. Wash. 2012).

Certifying this case as a class action would reduce the burden on the courts that would arise from 14,635 separate, yet virtually identical TCPA claims; would avoid duplicate discovery requests; would provide an efficient method for prompt resolution of the issue regarding the propriety of Defendant's conduct; and would likely result in a more expedient recovery for Class members who would not have to seek individual legal representation once they were to become aware of their rights against Defendants, if at all. *See Compl. ¶ 30.*

Since Plaintiff's claims arise from ████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████, nearly all of the issues of law and fact are common to the Class, and certifying this case as a class action will produce common answers sought by the parties, including Defendant, such as how many people were called on their cell phone with a California area code by Defendant using an ATDS and/or an artificial or prerecorded message where their cell phone numbers were provided to Defendant by a third party on a customer loan application submitted to Defendant. *See Compl., ¶ 26.* Further discovery will permit Plaintiff to determine exactly how many ATDS and/or artificial or prerecorded calls were placed to each class member, as Defendant has not yet provided information regarding the frequency of the calls. Kazerounian Decl., ¶ 14. However, the entire outbound dial list can easily be scrubbed against the unique cellular telephone numbers to obtain

Kazerouni Law Group, APC
Costa Mesa, California

call frequency quickly. Hansen Decl., ¶ 4.

Therefore, the commonality prerequisite is easily satisfied here.

### D.    Typicality

Rule 23(a)(3) requires that the claims of the representative parties be typical of the claims of the class. The typicality requirement serves to "assure that the interest of the named representative aligns with the interests of the class." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). Typicality refers to the *nature* of the claim or defense of the class representative and not on facts surrounding the claim or defense. *Id.* (Italics added.) A claim is typical if it "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and . . . [is] based on the same legal theory." H. Newberg, *Newberg on Class Actions* § 1115(b) (1st Ed. 1977). *See id.* at 1020. Typicality is met if the claims of each class member arise from the same "course of conduct" (*Armstrong v. Davis*, 275 F.3d at 869), and the defendant's liability turns on "similar legal argument" (*id.* at 868.) "[T]he injuries [must] result from the same, injurious course of conduct." *Id.* at 869.  "[W]hen the commonality prong is satisfied under Rule 23(a)(2), the typicality prong…generally follows suit." *Harris v. Circuit City Stores, Inc.*, 2008 U.S. Dist. LEXIS 12596 (N.D. Ill. Feb. 7, 2008). Typicality "should be determined with reference to [the defendant's] actions, not with respect to particularized defenses it might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. Ill. 1996). Typicality is established in a TCPA class where the "plaintiff brings the same TCPA claim that will be advanced by the class." *Holtzman v. Turza*, 2009 U.S. Dist. LEXIS 95620, *13 (N.D. Ill. Oct. 14, 2009).

Plaintiff's TCPA claims are typical of those of the class members. *See* McCarty Depo., 38:24-39:8 (QC Holdings acknowledged that its policy is to obtain consent from the borrower only to call the employer and third party contacts, which policy was followed in this case as it concerns the Plaintiff); *see also id.* at 37:22-38:2 (QC Holdings relies on the representations of the borrowers that there is permission

Kazerouni Law Group, APC
Costa Mesa, California

to call the third party contacts). Further, the harm suffered by the Plaintiff is identical to the harm suffered by the class members at large, in that their statutory right to privacy (*Meyer v. Portfolio Recovery Assocs.*, LLC, 696 F.3d 943, 951 (9th Cir. Cal. 2012) was invaded by Defendant when Defendant placed automated and/or artificial or prerecorded debt collection calls to cellular telephone numbers provided not by the called party but by a third party QC holdings account holder, without prior express consent of the called party. *See* Compl, ¶ 27. Thus, this case is similar to *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. Cal. 2012) where the Ninth Circuit affirmed provisional class certification of an autodialed TCPA case.

By virtue of Defendant's conduct being the result of a ████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ (*see* McCarty Depo., 30:7-15; 38:24-39:8; 32:8-35:13; 85:10-12), Plaintiff and each class member suffered the same harm (i.e. their privacy rights under the TCPA were violated), in the same manner or similar (i.e., an ATDS and/or an artificial or prerecorded message). *See* Compl. ¶¶ 27-28. Although the issue of whether the equipment used by Defendant constitutes an ATDS is not to be decided on the present motion, █████████████████████████████ and prerecorded message to place calls to Plaintiff (McCarty Depo., 38:6-19; 41:16-23; 42:12-43:1)[18] and the putative class (*see id.* at 30:7-15; 38:24-39:8; 43:13-16; 44:21-23; 74:25-75:12; 85:10-12). Also, ██████████████████████████████████. *Id.* at 74:25-75:12.

Each Class member claims statutory damages for invasion of a statutory right to privacy that resulted from Defendant's autodialed and/or artificial or prerecorded debt collection calls to third parties without prior express consent. *See* Compl., ¶¶ 27.

---

[18] The customer application submitted by ████████ included Plaintiff's cell phone number in the Employment field, which number was called by Defendant. McCarty Depo., 35:14-36:25; 38:6-19; 41:16-23; *see also* Defendant's Response to Request for Admission No. 3 (Exhibit D to Kazerounian Decl.).

**Kazerouni Law Group, APC**
Costa Mesa, California

1  Thus, there is no danger the named Plaintiff will be preoccupied with a unique

2  defense (*see Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. Cal. 1992)),

3  as the only defense is the affirmative defense of prior express consent, which is not at

4  issue here. Defendant has already admitted to calling Plaintiff, who is not a customer

5  of Defendant and did not provide Plaintiff's cellular telephone number to Defendant

6  on a customer application. *See* McCarty Depo. 38:6-19; 41:16-23; 73:6-73:17; 74:4-

7  9; 90:7-12. Moreover, Defendant has already provided documentation (i.e., Bates

8  QCHI000656-QCHI132994; and the outbound dial list) that shows Defendant called

9  telephone numbers in third-party contact fields (Swigart Decl. ¶¶ 7-11; Kazerounian

10  Decl. ¶ 9-11), which include telephone numbers that are necessarily telephone

11  numbers obtained by Defendant from someone other than the called party. Plaintiff

12  has even elected to only pursue *debt collection* calls placed by prohibited means, in

13  an effort to further narrow the scope of the class and demonstrate even greater

14  typicality than is necessary for class certification, despite the fact this section of the

15  TCPA is content-neutral.

16  Thus, the typicality requirement is also satisfied here.

17  **E.   Adequacy of Representation**

18  The fourth requirement of Rule 23(a) is that "the representative parties will

19  fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Due

20  process requires as much. *Hanlon*, 150 F.3d at 1020. Court ask two questions: "(1)

21  Do the representative plaintiffs and their counsel have any conflicts of interest with

22  other class members, and (2) will the representative plaintiffs and their counsel

23  prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327

24  F.3d at 957; Fed. R. Civ. P. 23(g)(1)(B) ("class counsel must fairly and adequately

25  represent the interests of the class"). Plaintiff's counsel will fairly, responsibly,

26  vigorously, and adequately represent the interests of the class members whose

27  statutory rights under the TCPA were violated by Defendant. *See* Kazerounian Decl.

28  at ¶¶ 23-27; Swigart Decl., ¶¶ 16-21; Friedman Decl., ¶¶ 4-6. Plaintiff shares the

same interests of all class members, comprised of persons who were all harmed in the same way by QC Holdings automated and/or artificial or prerecorded voice calls for the purpose of collecting or attempting to collect a debt allegedly owed or owing to someone else. Plaintiff is familiar with the TCPA (Stemple Depo., 62:5-63:12) and also understands the duties of acting as class representative, including that the responsibility to see that Plaintiff's counsel prosecute the case on behalf of the entire class, not just Plaintiff. *See* Stemple Depo., 68:17-23; Stemple Decl., ¶ 8.

There are no known conflicts in this case (Kazerounian Decl., ¶ 28; Swigart Decl., ¶ 22; Friedman Decl., ¶ 7; Stemple Decl., ¶ 10), and it is highly unlikely that a conflict would exist, given the common practice of Defendant, fixed statutory damages, and the requested injunctive relief. *See Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483, *18 (N.D. Cal. Dec. 22, 2011) ("apart from [his] proposed incentive award, []he will receive the same relief as the class…and there is no apparent conflict of interest"). Plaintiff has retained competent class counsel experienced in TCPA litigation and class actions to represent the interests of the Class.[19] Kazerounian Decl., ¶¶ 23-27; Swigart Decl., ¶¶ 16-21; Friedman Decl., ¶¶ 4-6. Therefore, the adequacy prerequisite has been satisfied.

### F. Hybrid Class Certification Should Be Granted

#### 1. Rule 23(b)(2)

Certification under Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b); *see also* Compl., ¶ 31. Plaintiff considers the calls from Defendant to be bothersome. Stemple Depo., 60:17-19. An order awarding statutory damages and prohibiting Defendant from placing calls to cellular telephones of non-account holders of Defendant without prior express written

---

[19] Late last year, Plaintiff's counsel Abbas Kazerounian and Joshua B. Swigart were appointed as class counsel in a similar TCPA class action in *Lemieux v. Schwan's Home Service, Inc. et al.*, 12-cv-00964-GPC-DHB (S.D. Cal.).

consent would resolve the Plaintiff's complaint. Stemple Decl. ¶ 11. Plaintiff and each class member were harmed in the same manner, and may continue to be harmed, in the absence of an injunction, because Defendant would otherwise be free to continue their illegal practice of utilizing its profitable automated dialer (████ ██████████████████████████) to place debt collection calls to persons who did not provide their cell phone numbers to Defendant, in violation of the TCPA. *See Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043-45 (9th Cir. Cal. 2012) (affirming preliminary injunction in TCPA class action). In fact, Plaintiff received calls even after this lawsuit was filed. McCarty Depo., 90:13-16.

In *Yoshioka v. Charles Schwab Corp.*, 2011 U.S. Dist. LEXIS 147483, *20 (N.D. Cal. Dec. 22, 2011), the court explained, "[t]he key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them." (citing *Dukes*, 131 S. Ct. at 2557). This requirement was satisfied in *Yoshioka* because the requested relief, and the relief to be provided, would apply class-wide. *Id.* Plaintiff's requested remedy is the appropriate remedy for a class action under Rule 23(b)(2), which "applies only when a single injunction or declaratory judgment would provide relief to each member of the class" (*Dukes*, 131 S.Ct. at 2557), based upon Defendant's debt collection calls to Third Parties. Therefore, class certification under Fed. R. Civ. P. 23(b)(2) is necessary and appropriate here, as there is no assurance that the named Plaintiff's cellular telephone number will not be called by QC Holdings in the event such number is provided by an account holder as a third party contact.

## 2.   Rule 23(b)(3)

Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3); *Wolin v. Jaguar Land Rover N. Am.,*

Kazerouni Law Group, APC
Costa Mesa, California

*LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010).[20] "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon v. Chrysler Corp.*, 150 F.3d at 1022 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)). "Individual questions need not be absent." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. Ill. 2012). "Court[s] looks at common factual link[s] between all class members and the defendants for which the law provides a remedy." *Abels v. JBC Legal Group, P.C.*, 227 F.R.D. 541, 547 (N.D. Cal. 2005). "Implicit in…the predominance test is…that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "Generally, when a class challenges a uniform policy or practice, the validity of the policy or practice tends to be the predominant issue in the ensuing litigation." *CE Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135, 142 (N.D. Ill. 2009) (citing *General Telephone Co. of Sw. v. Falcon*, 457 U.S. 147, 159 n.15 (1982)).

The principal legal issue in this case is whether QC Holdings' ███████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████. The only potential individual issue is the identification of some of the class members. This will be accomplished by a review of Defendant's records to obtain the telephone numbers and then call those numbers to obtain address information through the use of a call center, then end direct mail where possible and give publication notice. Also, the predominance of common legal and factual questions is evidenced in this case by the nature of Plaintiff's single TCPA claim.

Due to the fact that Defendant has not and cannot provide any evidence of prior express consent directly from the named Plaintiff or any class member, and QC

---

[20] "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative … basis." 7A Charles Alan Wright, et al., *Federal Practice & Procedure* § 1778 (2d ed. 1986)).

Kazerouni Law Group, APC
Costa Mesa, California

Holdings admits the named Plaintiff is not a customer of QC Holdings (McCarty Depo., 90:7-12; *see also id.* at 74:4-9), Defendant cannot reasonably claim that consent is an individualized issue in this case that requires mini-trials on the issue of prior express consent defense, since no such evidence exists.  The provision of a cellular telephone number by a third party under the circumstances of this case does not amount to prior express consent from the user of the telephone number to receive debt collection calls from QC Holdings regarding someone else's alleged debt (i.e., the account holder who included the third party's number on the customer application). In other words, QC Holdings' ███████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████. ████████████.

Again, the question of "prior express consent" (an affirmative defense) in this TCPA action does not present an individualized issue because Defendant failed to obtain prior express consent to place the debt collection calls to third parties, which means that there is no need for any mini-trial on the merits because Defendant possesses no documentary evidence of prior "express" consent to call such persons in an attempt to collect a debt from an account holder. *See G.M. Sign, Inc. v. Finish Thompson, Inc.*, 2009 U.S. Dist. LEXIS 73869, 18 (N.D. Ill. Aug. 20, 2009) ("There is no evidence in the record … to indicate that individual issues of consent will subsume common issues."). Defendant obtained third party telephone numbers from its customers on the customer application, ████████████████████████, and then called those telephone numbers by prohibited means.[21] Thus, any argument by QC Holdings that Plaintiff and the class gave Defendant prior express consent to received the calls at issue (for debt collection purposes) must fail. *See Manno v.*

_____

[21] Plaintiff is does not have an account with Defendant and did not give prior express consent to Defendant to call him by means of an ATDS or prerecorded voice. *See* Defendant's Response to Request for Admission Nos. 9-11 (Exhibit D to Kazerounian Decl.).

*Healthcare Revenue Recovery Group, LLC*, 2013 U.S. Dist. LEXIS 52620, *39 (S.D. Fla. Mar. 26, 2013) (finding in a TCPA prerecorded call case that whether "class members consented *ipso facto* during the admissions process - is not an individualized issue defeating predominance, but is itself a question/defense common to the class as a whole.").

Even if such actions by the account holder amounted to prior express consent to call the third party numbers (which is a purely legal issue), the prior express consent issue would still be common to the entire class, which is all that is required for purposes of the commonality and predominance requirements. *See Lee*, 289 F.R.D. at 295 (noting that prior express consent is a merits issue that is not to be resolved on a motion for class certification). Notably, Fed. R. Civ. P. 23(b)(3) does not require that all issues of law and fact be subject to common proof, as even the rule itself recognizes that there may be some issues that are individualized. *See Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492 (N.D. Cal. 2012) (the predominance question is not one of scale; instead it is whether certification would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results).

There is clear justification here for handling this dispute under § 227(b)(1)(A)(iii) of the TCPA on a representative rather than an individual basis. The issues that make up Plaintiff's single TCPA claim are common to the class members, who have allegedly been injured in the same way and in virtually the same manner by Defendant's ████████████████████████████████████████ ████████████████████████. Through a class action, the Court may resolve at once important common questions to which all parties seek an answer, as explained above, thus serving the policy goal of judicial economy as explained by the Ninth Circuit (*Valentino*, *supra*, 97 F.3d at 1234). *See* Compl., ¶ 33.

Therefore, the common issues predominate in this TCPA action. *See Lemieux*,

Kazerouni Law Group, APC
Costa Mesa, California

2013 U.S. Dist. LEXIS 127032 at *26; *see also Lee*, 2013 U.S. Dist. LEXIS 19774 at *11-12 ("however strong [defendant's] arguments on the merits may be for avoiding liability, there is no reason those issues cannot be properly decided on a class-wide basis, and plaintiff has otherwise satisfied the prerequisites for certification…"); *Lemieux*, 2013 U.S. Dist. LEXIS 127032 at *26 (rejecting the defendant's contention that the issue of whether "the recipient provide[d] consent" in that TCPA case may require individualized answers where the defendants placed prerecorded delivery-related calls to cell phones regardless of whether the called party was an active customer of Nutrisystem or had an active order).

Hybrid certification under Rules 23(b)(2) and (b)(3) is therefore appropriate.

### G.    A Class Action Is Superior To Numerous Individual TCPA Actions

"Class actions were designed for these types of claims." *G.M. Sign, Inc. v. Group C Communs., Inc.*, 2010 U.S. Dist. LEXIS 17843, *16 (N.D. Ill. Feb. 25, 2010) (quoting *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) ("Rule 23(b) was designed for situations … in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate."). This inquiry calls for a comparison of alternative methods for resolution of the dispute (*Hanlon*, 150 F.3d at 1023), such as the TCPA claims common to the Class.

Class certification here is superior to 14,635 TCPA actions and thus serves the efficient and appropriate resolution of Defendant's alleged violations of the TCPA, which implicates the rights of tens of thousands of persons throughout the nation, and will provide no difficulty in allocating fixed statutory damages under 47 U.S.C. § 227(b)(3)(B). It would avoid a multiplicity of actions and possible inconsistencies in judgment. If multiple TCPA suits were filed, there would be a risk of inconsistent results arising from injunctive relief regarding the numerous consumers affected by Defendant's text messaging practices. *See e.g.*, *Westways World Travel, Inc. v. AMR Corp.*, 218 F.R.D. 223, 236-37 (C.D. Cal. 2003) ("Where common questions 'predominate,' a class action can…avoid inconsistent outcomes…"). *See also Bellows*

Kazerouni Law Group, APC
Costa Mesa, California

*v. NCO Fin. Sys.*, 2008 U.S. Dist. LEXIS 114451, 20 (S.D. Cal. Sept. 5, 2008) (holding in a TCPA action that the class action procedure is the superior mechanism for dispute resolution in such matter, as the alternative mechanism, permitting individual lawsuits for a small statutory penalty, would be costly and duplicative).

Importantly, consumers are not likely aware of their rights under consumer protection statutes, such as the TCPA. *See Thomasson v. GC Servs., Ltd. P'ship*, 275 F.R.D. 309, 317 (S.D. Cal. 2011) ("Individuals are most likely unaware of their rights under the FDCPA"). The class members are individual consumers who are not likely able to successfully maintain a TCPA action against Defendant where the maximum statutory damages per negligent violation of the TCPA is only $500.[22]

## VI.   CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests the Court grant Plaintiff's Motion for Class Certification under Rule 23(b)(2) and (b)(3) against QC Holdings, appoint Plaintiff as Class Representative, and appoint Plaintiff's attorneys (Abbas Kazerounian, Joshua B. Swigart, and Todd M. Friedman) as Class Counsel.

Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

Date: February 14, 2014                    By:/s/ Abbas Kazerounian
                                                      Abbas Kazerounian
                                                      *Attorney for Plaintiff*

**HYDE & SWIGART**
Joshua B. Swigart, Esq. (SBN: 225557)
josh@westcoastlitigation.com
2221 Camino Del Rio South, Suite 101
San Diego, CA 92108
Telephone: (619) 233-7770
Facsimile: (619) 297-1022
*Attorneys for Plaintiff*

---

[22] "To permit the defendants to contest liability with each claimant in a single, separate suit…would be almost equivalent to closing the door of justice to all small claimants." *Weeks v. Bareco Oil Co.*, 125 F.2d 84, 90 (7th Cir. Ill. 1941).

*Kazerouni Law Group, APC*
Costa Mesa, California

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**
Todd M. Friedman (SBN: 216752)
Nicholas J. Bontrager (SBN: 252114)
369 S. Doheny Dr., #415
Beverly Hills, CA 90211
Telephone: 877-206-4741
Facsimile: 866-633-0228
*Attorneys for Plaintiff*