1

2

3

4

5

6

7

8          **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| PAUL STEMPLE, Individually and On Behalf of All Others Similarly Situated,<br><br>                                   Plaintiff,<br><br>     v.<br><br>QC HOLDINGS, INC.,<br><br>                                   Defendant. | Case No.  12-cv-01997-BAS(WVG)<br><br><u>CLASS ACTION</u><br><br>**ORDER:**<br> **(1)   GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (ECF NO. 39);**<br><br> **(2)   DENYING DEFENDANT'S *EX PARTE* MOTION TO STRIKE PLAINTIFF'S NOTICE OF ERRATA (ECF NO. 47); AND**<br><br> **(3)   DENYING DEFENDANT'S MOTION TO STRIKE THE REPORT AND TESTIMONY OF ILYA EVDOKIMOV (ECF NO. 51).** |

11

12

13

14

15

16

17

18

19

20

21

22

23

24         Presently before the Court is a motion to certify a Telephone Consumer

25    Protection Act, 47 U.S.C.  § 227 *et seq.* ("TCPA"), class action filed by Plaintiff Paul

26    Stemple ("Plaintiff").  (ECF No. 39.)  Defendant QC Holdings, Inc. ("Defendant")

27    opposes certification primarily arguing that individualized issues pertaining to prior

28    express consent defeat the "commonality" requirement in Federal Rule of Civil

Procedure 23(a) and the "predominance" requirement in Rule 23(b).  (ECF No. 54.) In addition, Defendant also argues: (1) the proposed class is not ascertainable in part because cell phone numbers could have changed over time, (2) class action is not a superior method of adjudication because the plan for noticing the class is unworkable, (3) Plaintiff cannot adequately represent the class because he has a felony conviction, and (4) Plaintiff's request for hybrid certification under both Rule 23(b)(2) and Rule 23(b)(3) is improper.  In his reply, Plaintiff suggests that the class definition could be amended by the court *sua sponte* to exclude any prior loan applicants, thereby negating Defendant's main argument regarding prior express consent.

Finally, Defendant moves to strike Plaintiff's Errata ostensibly amending Plaintiff's expert's testimony as an improper Notice of Errata (ECF Nos. 46, 47) and moves to strike all of Plaintiff's expert's testimony as unreliable under *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 597 (1993) (ECF No. 51).

The Court finds this motion suitable for determination on the papers submitted and without oral argument.  *See* Civ. L.R. 7.1(d)(1).  For the reasons set forth below, this Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's Motion for Class Certification (ECF No. 39).  The Court **GRANTS** Plaintiff's Motion for Class Certification under Rule 23(b)(3) with the Court's modification to the class definition as discussed below, and **DENIES** Plaintiff's Motion for Class Certification under Rule 23(b)(2).  The Court further **DENIES** Defendant's *Ex Parte* Motion to Strike Plaintiff's Notice of Errata and Declaration of Ilya Evdokimov in support thereof (ECF No. 47) and **DENIES** Defendant's Motion to Strike the Report and Testimony of Ilya Evdokimov in support of Plaintiff's Motion for Class Certification (ECF No. 51).

## I.     STATEMENT OF FACTS

Defendant QC Holdings, Inc. is a company that provides short-term (payday) loans to applicants.  (ECF No. 1 at ¶ 5; ECF No. 54 at p. 4.)  Applicants for a short-

term loan are required to fill out a loan application.  (ECF No. 39 at Exh. F; ECF No. 54 at p. 4.)  As part of the loan application, applicants are required to provide contact telephone numbers and give express consent to be contacted at these telephone numbers, cellular or not, via an automated telephone dialing system ("ATDS") or not, for purposes of debt collection. (ECF No. 39 at Exh. F; ECF No. 54 at p. 4, Exh. D; ECF No. 72 at Exhs. B, C (sealed).)   Applicants are also required to give "Employment" information, including Employer's name, telephone number and address, and "Contacts" information, including but not limited to, current landlord and "nearest relative not living with you" together with telephone contact information for these individuals.  (ECF No. 39 at Exh. F; ECF No. 54 at p. 4, Exh. D; ECF No. 72 at Exhs. B, C (sealed).)

One of the applicants for such a short-term loan provided Plaintiff's name and cellular telephone number as his Employer under the Employment section of his loan application.  (ECF No. 39 at p. 3; ECF No. 39-16; ECF No. 54 at pp. 5-6; ECF No. 72-3 (sealed).)  Plaintiff was not an applicant for a loan himself (ECF No. 54 at p. 1) and alleges he never provided his telephone number to Defendant nor gave any consent to Defendant to be contacted on his telephone.  (ECF No. 1 at ¶¶ 9, 10, 18.) Nonetheless, according to Plaintiff, when attempting to collect a debt from this applicant, Defendant repeatedly contacted Plaintiff via an ATDS in violation of the TCPA. (*Id*. at ¶ 12.)

**A.    Identification of the Class**

In his original moving papers, Plaintiff proposes that the class be defined as follows:

> All persons whose 10-digit cellular telephone numbers with a California area code were listed by an account holder in the Employment and/or Contacts fields of a California customer loan application produced to [Defendant], which were called by [Defendant] using an [ATDS] and/or an artificial or prerecorded voice for the purpose of collecting or attempting to collect an alleged debt from the account holder, between August 13, 2008 and August 13, 2012.

1    (ECF No. 39-1 at p. 4.)  Plaintiff proposes identifying this class by extracting all of

2    the ten-digit cellular telephone numbers listed in the Employer or Contact sections of

3    the California loan applications produced in discovery and then cross-referencing this

4    list with the list of California cellular telephone numbers identified by Defendant as

5    being called for debt collection between August 2008 and August 2012.  (*Id*. at pp. 9-

6    11.)  In other words, any owner of a California cellular telephone number listed by a

7    loan applicant in the Employer or Contact sections and then called by Defendant

8    using an ATDS would be a member of the class.

9          In opposition, Defendant argues that this proposed class might include

10   individuals who are also applicants and who had thus provided express prior consent

11   to be contacted for purposes of debt collection.   (ECF No. 54 at pp. 11-14.)

12   Defendant identifies two potential groups this might encompass.  First, Defendant

13   points to examples where applicants had put the same numbers in the Personal

14   section of the application as they had in the Employer section.   (*Id*. at p. 11-12.)

15   These applicants expressly consented to be contacted on their personal cell phone,

16   even though they later repeated the number in the Employer section.  (ECF Nos. 54

17   and 72 at Exhs. I-N.)  Second, Defendant argues there might be individuals who are

18   applicants but are also listed as an Employer or Contact on another applicant's

19   application. (ECF No. 54 at pp. 13-14.)  Defendant points to two examples where an

20   applicant is also a relative contact in the Contact section of another loan applicant.

21   (ECF Nos. 54 and 72 at Exhs. B and P, Q and R.)  Finally, Defendant argues that

22   individuals can, under certain circumstances, provide prior express consent to be

23   called at a telephone number other than their own, so the individual factual

24   circumstances surrounding each applicant's relationship with the third party is

25   necessary to determine consent. (ECF No. 54 at pp. 14-15.)

26         In response, Plaintiff suggests that the proposed class definition could be

27   modified by the Court *sua sponte* to exclude calls to Defendant's customers.  (ECF

28   No. 61 at p. 2, n. 2.)

1

## B.   Expert Testimony of Ilya Evdokimov

2    In support of his Motion for Class Certification, Plaintiff retained Ilya

3 Evdokimov, a contractor with Electronic & Speech Discovery, Inc. to extract cellular

4 telephone numbers from the loan applications and then, using computer software, to

5 compare them to the cellular telephone numbers called by Defendant to collect debts.

6 (ECF No. 39-1 at pp. 10-11; ECF No. 39-13.)

7    In a Declaration attached to Plaintiff's Motion for Class Certification, Mr.

8 Evdokimov testified that the numbers in the Employer and Contact sections of the

9 loan applications were manually entered into computers and then run against the

10 numbers provided by Defendant as those numbers called by an ATDS for debt

11 collection.  (ECF No. 39-13 ("Evdokimov Decl.") at ¶¶ 3-5, 7; ECF No. 39-2 at ¶ 7-

12 12.)    Mr.  Evdokimov  testified  the  comparison  resulted  in  14,635  matches.

13 (Evdokimov Decl. at ¶ 7.)

14    After this Declaration was filed, Plaintiff filed a Notice of Errata.  (ECF No.

15 46.)  Attached to the Notice of Errata was a Declaration from Mr. Evdokimov stating

16 that in the process of testifying he had come to realize that data had been inputted

17 incorrectly in that only cellular telephone numbers from the "Contacts" section of the

18 loan applications had been manually entered, not the "Employment" section.  (ECF

19 No. 46-1 at ¶ 3.)   He corrected the problem and had the "Employment" section

20 numbers added to the comparison.  (*Id*.)  The resulting matches were increased to

21 20,075.  (*Id*.)

22    After receiving Defendant's Opposition to the Motion for Class Certification,

23 objecting  that  this  process  could  include  Defendant's  customers,  Plaintiff  then

24 requested that Mr. Evdokimov take the above revised matches and remove any

25 cellular telephone numbers of applicants that were listed in the "Personal" section of

26 the applications.  (ECF No. 61 at p. 2; ECF No. 61-1 ("Evdokimov Reply Decl.".)

27 According to Plaintiff, this would modify the class to avoid Defendant's concern that

28 the class may include applicants who had given express prior consent to be contacted.

1    (ECF No. 61 at p. 2, n. 2.)  When Mr. Evdokimov made this modification, he testified

2    he obtained 6,387 matches.  (Evdokimov Reply Decl. at ¶ 9).

3    **II.    STATEMENT OF LAW**

4        **A.    Certification of Class Under Federal Rule of Civil Procedure 23**

5        "The class action is 'an exception to the usual rule that litigation is conducted

6    by and on behalf of the individual named parties only.'" *Wal-Mart Stores, Inc. v.*

7    *Dukes*, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682,

8    700-01 (1979)).  In order to justify a departure from the usual rule, a party seeking

9    class certification must satisfy all of the requirements under Rule 23(a) of the Federal

10   Rules of Civil Procedure, and at least one of the categories in Rule 23(b).  *Wang v.*

11   *Chinese Daily News, Inc.,* 737 F.3d 538, 542 (9th Cir. 2013); *United Steel, Paper &*

12   *Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v.*

13   *ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010).  A class may be certified only

14   "if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule

15   23(a) have been satisfied."  *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161

16   (1982); *Ellis v. Costco Wholesale Corp.,* 657 F.3d 970, 980 (9th Cir. 2011).  The

17   merits of the class members' substantive claims may be highly relevant to

18   determining whether to certify a class and "'a district court *must* consider the merits'

19   if they overlap with Rule 23(a)'s requirements."  *Wang*, 737 F.3d at 433 (quoting

20   *Ellis*, 657 F.3d at 983).  "The same analytical principles govern Rule 23(b)."

21   *Comcast v. Behrend*, 133 S.Ct. 1426, 1432 (2013).  The burden is on the plaintiff to

22   establish that the Rule 23(a) and Rule 23(b) requirements have been met. *Zinser v.*

23   *Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

24       As a preliminary matter, "and apart from the explicit requirements of Rule

25   23(a), the party seeking class certification must demonstrate that an identifiable and

26   ascertainable class exists."  *Mazur v. eBay Inc*., 257 F.R.D. 563, 567 (N.D. Cal.

27   2009).  Although the exact identities of the class members need not be specified at

28   the class certification stage, "the proposed class must be sufficiently definite in order

1    to demonstrate that a class actually exists." *Oshana v. Coca-Cola Bottling Co.*, 225

2    F.R.D. 575, 580 (N.D. Ill, 2005); *see also Mazur*, 257 F.R.D. at 567; *O'Connor v.*

3    *Boeing N. Am., Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) ("[A] class will be found

4    to exist if the description of the class is definite enough so that it is administratively

5    feasible for the court to ascertain whether an individual is a member."). Once a

6    plaintiff has established that a class is actually ascertainable, then it must show that

7    the Rule 23 requirements have been met. *Id.*

8    "Rule 23(a) provides four prerequisites that must be satisfied for class

9    certification: (1) the class must be so numerous that joinder of all members is

10   impracticable ['numerosity']; (2) questions of law or fact must exist that are common

11   to the class ['commonality']; (3) the claims or defenses of the representative parties

12   must be typical of the claims or defenses of the class ['typicality']; and (4) the

13   representative parties must fairly and adequately protect the interests of the class

14   ['adequacy']." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal.

15   2008) (citing Fed. R. Civ. P. 23(a)).

16   "A plaintiff must also establish that one or more of the grounds for maintaining

17   the suit are met under Rule 23(b), including: (1) that there is a risk of substantial

18   prejudice from separate actions; (2) that declaratory or injunctive relief benefitting

19   the class as a whole would be appropriate; or (3) that common questions of law or

20   fact predominate and the class action is superior to other available methods of

21   adjudication." *Otsuka*, 251 F.R.D. at 443-44 (citing Fed. R. Civ. P. 23(b)). In this

22   case, Plaintiff seeks certification under both Rule 23(b)(2) and Rule 23(b)(3).

23               **1.    *Numerosity – Rule 23(a)(1)***

24   Rule 23(a)(1) requires that the class be "so numerous that joinder of all

25   members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that

26   the numerosity factor is satisfied if the class comprises 40 or more members and will

27   find that it has not been satisfied when the class comprises 21 or fewer." *Celano v.*

28   *Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

### 2.    *Commonality – Rule 23(a)(2)*

Under Rule 23(a)(2), the named plaintiff must demonstrate that there are "questions of law or fact common to the class."    Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Wal-Mart*, 131 S. Ct. at 2551 (quoting *Falcon*, 457 U.S. at 157).   However, "[a]ll questions of fact and law need not be common to satisfy the rule."    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).    "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

Commonality does not turn on whether common issues are raised, "'but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation.'" *Wang,* 737 F.3d at 543 (quoting *Wal-Mart*, 131 S.Ct. at 2551) (emphasis in original).   Determination of the truth or falsity of a common contention must "'resolve an issue that is central to the validity of each one of the claims in one stroke.'"   *Meyer v. Portfolio Recovery Associates, LLC*, 707 F.3d 1036, 1041-42 (quoting *Wal-Mart*, 131 S.Ct. at 2551).

### 3.    *Typicality – Rule 23(a)(3)*

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class.    Fed. R. Civ. P. 23(a)(3).    The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably coextensive with those of absent class members."   *Hanlon*, 150 F.3d at 1020.    "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*, 108 F.R.D. 279, 282 (C.D. Cal. 1985)).

"[C]lass certification should not be granted if 'there is a danger that absent

1   class members will suffer if their representative is preoccupied with defenses unique

2   to it.'"  *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner*

3   *& Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

4   ### 4.    *Adequacy – Rule 23(a)(4)*

5   Rule 23(a)(4) requires that the representative plaintiff "will fairly and

6   adequately protect the interest of the class."  Fed. R. Civ. P. 23(a)(4).  "To satisfy

7   constitutional due process concerns, absent class members must be afforded adequate

8   representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at

9   1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42-43 (1940)).  "Resolution of two

10  questions determines legal adequacy: (1) do the named plaintiffs and their counsel

11  have any conflicts of interest with other class members and (2) will the named

12  plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"

13  *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir.

14  1978)).

15  It may be proper for the court to consider a proposed class representative's

16  integrity in assessing his adequacy as a class representative.  *In re Proxima Corp. v.*

17  *Sec. Litig.*, 1994 WL 374306, at *17 (S.D. Cal. May 3, 1994).  Thus, courts have

18  determined a proposed representative was inadequate when he admitted a role in

19  committing securities fraud. *Id.; cf. Meyer*, 707 F.3d at 1042 (although the proposed

20  class representative had a conviction for dishonesty, he was still deemed an

21  appropriate representative since the conviction was more than ten years old and

22  representative had taken positive steps since the conviction).

23  ### 5.    *Injunctive Relief – Rule 23(b)(2)*

24  Rule 23(b)(2) requires a plaintiff to establish that the defendant "has acted or

25  refused to act on grounds that apply generally to the class, so that final injunctive

26  relief or corresponding declaratory relief is appropriate respecting the class as a

27  whole."  Fed. R. Civ. P. 23(b)(2).  Claims for individualized monetary relief belong

28  in a Rule 23(b)(3) certification, not under Rule 23(b)(2). *Wang*, 737 F.3d at 544

1   (citing *Wal-Mart*, 131 S.Ct. at 2558).

2   **6.   *Predominance – Rule 23(b)(3)***

3   Rule 23(b)(3) requires the court to find "that the questions of law or fact

4   common to class members predominate over any questions affecting only individual

5   members."  Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry focuses on 'the

6   relationship between the common and individual issues' and 'tests whether proposed

7   classes are sufficiently cohesive to warrant adjudication by representation.'"  In

8   *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935 (9th Cir. 2009), the Ninth

9   Circuit noted:

10  > Rule 23(b)(3)'s predominance and superiority requirements were
    > added to cover cases in which a class action would achieve economies
11  > of time, effort, and expense, and promote…uniformity of decision as
    > to persons similarly situated, without sacrificing procedural fairness or
12  > bringing about other undesirable results.  Accordingly, a central
    > concern of the Rule 23(b)(3) predominance test is whether
13  > adjudication of common issues will help achieve judicial economy.
14

15  *Id*. at 944 (internal quotation marks and citations omitted).  This is a "far more

16  demanding" standard than the commonality requirement of Rule 23(a). *In re*

17  *Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310-311 (3d Cir. 2008) (quoting

18  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir.

19  2001)).

20  **7.   *Superiority – Rule 23(b)(3)***

21  In addition to the "predominance" inquiry outlined above, a court must also

22  find that "a class action is superior to other available methods for fairly and

23  efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  "Where

24  classwide litigation of common issues will reduce litigation costs and promote greater

25  efficiency, a class action may be superior to other methods of litigation," and it is

26  superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d

27  1227, 1234-35 (9th Cir. 1996).  The following factors are pertinent to this analysis:

28  "(A) the class members' interests in individually controlling the prosecution or

1    defense of separate actions; (B) the extent and nature of any litigation concerning the

2    controversy already begun by or against class members; (C) the desirability or

3    undesirability of concentrating the litigation of the claims in the particular forum; and

4    (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A)-

5    (D).

6    **B.    TCPA**

7         Under the TCPA, a plaintiff must prove (1) that the defendant called a cellular

8    telephone number (2) using an ATDS (3) without the recipient's prior express

9    consent. *Meyer v. Portfolio Recovery Associates, LLC,* 707 F.3d 1036, 1043 (9th Cir.

10   2012) (citing 47 U.S.C. § 227(b)(1)).[1]

11        In *Meyer*, the Ninth Circuit rejected the defendant's arguments that

12   individualized issues of consent should preclude a finding of typicality or

13   commonality because some debtors might have agreed to be contacted at any

14   telephone number, since the defendant failed to point to a single case where consent

15   was given. *Id.* at 1042.  Similarly, "[d]efendants' speculation that customers may

16   have given their express consent to receive text message advertising is not sufficient

17   to defeat class certification." *Agne v. Papa John's Intern., Inc.*, 286 F.R.D. 559, 566

18   (W.D. Wash. 2012).

19   **C.    Expert Testimony**

20        The court is required to apply the evidentiary standard set forth in *Daubert* to

21   expert testimony at the class certification stage.  *Ellis*, 657 F.3d at 982.  "Under

22   *Daubert*, the trial court must act as a 'gatekeeper' to exclude junk science that does

23

24   ———————————————

25   [1]    There appears to be some confusion in the Ninth Circuit as to whether the lack of prior express consent must be proven by the plaintiff or whether it is an affirmative

26   defense that must be proven by the defendant. *Cf. Grant v. Capital Management Services, L.P.,* 449 Fed. Appx. 598, 600, n. 1 (9th Cir. 2011) with *Meyer v. Portfolio*

27   *Recovery Associates, LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012); *Smith v. Microsoft Corp.,* 297 F.R.D. 464, 471 (S.D. Cal. 2014).  However, for purposes of this Order,

28   the Court will assume it is Plaintiff's burden.

1   not meet Federal Rule of Evidence 702's reliability standards by making a

2   preliminary determination that the expert's testimony is reliable." *Id.* (citing *Kumho*

3   *Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999)).

4   "'[W]hen an expert's report or testimony is critical to class certification…a

5   district court must conclusively rule on any challenge to the expert's qualifications or

6   submission prior to ruling on a class certification motion.'" *Sher v. Raytheon Co.,*

7   419 Fed. Appx. 887, 890 (11th Cir. 2011) (quoting *American Honda Motor Co., Inc.*

8   *v. Allen*, 600 F.3d 813, 815-16 (7th Cir. 2010)).   This is required "even if those

9   considerations overlap the merits of the case." *American Honda Motor Co., Inc.*, 600

10   F.3d at 815.

11   While "[i]n its sound discretion, a district court may find it unnecessary to

12   consider certain expert opinion with respect to a certification requirement,…it may

13   not decline to resolve a genuine legal or factual dispute because of concern for an

14   overlap with the merits.  Genuine disputes with respect to the Rule 23 requirements

15   must be resolved, after considering all relevant evidence submitted by the parties."

16   *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 324.

17   **III.   DISCUSSION**

18   **A.   Defendant's Motions To Strike Mr. Evdokimov's Testimony Are**

19   **Denied**

20   Defendant seeks to strike Plaintiff's Notice of Errata and to strike all testimony

21   of Mr. Evdokimov as unreliable.  (ECF Nos. 47, 51.)  Unlike the cases cited in both

22   parties' briefs, in this case, the class is readily ascertainable without resorting to

23   expert testimony.   Any individual whose telephone number is listed in the

24   "Employment" or "Contact" section of a loan application, who was contacted for

25   debt collection via an ATDS is a putative member of the class.

26   Mr. Evdokimov and his computer programs are being used solely as a vehicle

27   to manage the vast numbers of individuals encompassed by this description.  In other

28   words, instead of identifying the class by manually listing all names and telephone

numbers and then trying to figure out which of these thousands of individuals was actually contacted by Defendant, Mr. Evdokimov is using his computer to cross-reference these telephone numbers.  Obviously the data he is cross-referencing is only as good as the information that is being manually inputted.  The difficulties he has had manually inputting these numbers and figuring out which numbers should be manually inputted goes to the difficulties of managing the class, but not to the actual identification of the class.

As Plaintiff points out, ultimately the method for ascertaining the class has not changed.  Therefore, this Court declines to strike the Notice of Errata.  The Notice of Errata simply points out that the original input of data did not include all third party contacts.  In addition, the method Mr. Evdokimov is using to identify class members is based on reliable science and fairly simple computer cross-referencing methods.  Therefore, Defendant's Motions to Strike Expert Testimony (ECF Nos. 47 and 51) are **DENIED**.

**B.    Class Certification Is Granted Under Rule 23(b)(3) and Denied Under Rule 23(b)(2)**

**1.    *Requirements for Rule 23(a) Have Been Met***

As a preliminary matter, Defendant argues that the class is not ascertainable because the cellular telephone numbers identified by the Plaintiff could have changed over time.  (ECF No. 54 at p. 21.)  However, the members of the class are not being identified solely by their telephone numbers.  The loan application requests information about a loan applicant's "Employer" with address and telephone number, and other "Contacts" with telephone numbers.  (ECF No. 39 at Exh. F.)  Presumably, if the telephone number no longer belongs to the individual identified as the Employer or Contact, this can be ascertained during class notification.  Moreover, "[t]here is no requirement that the identity of the class members...be known at the time of certification." *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012) (citation and internal quotations omitted).  The class definition is

1  definite enough so that it is administratively feasible for the Court to ascertain

2  whether an individual is a member of the class.  *See G.M. Sign, Inc. v. Finish*

3  *Thompson, Inc*., 2009 WL 2581324, at *4 (N.D. Ill. Aug. 20, 2009) (finding TCPA

4  class identifiable because "[plaintiff] may use the log and fax numbers to 'work

5  backwards' to locate and identify the exact entities to whom the fax was sent.").

6  Therefore, this Court finds the class is ascertainable.

### a.  Numerosity

8  Defendant does not raise any issue with respect to the first prong of Rule 23(a).

9  Even if the class definition is amended to exclude any individuals whose telephone

10 number appears in the "Personal" section of a loan application, the class has well

11 over 1,000 members and is clearly so numerous that joinder of all members is

12 impracticable.

### b.  Commonality

14 In addition, common issues exist within the class.  Defendant argues that loan

15 applicants gave "express prior consent" to contact all individuals listed in the loan

16 application.  (ECF No. 54 at p. 10.)  Plaintiff argues loan applicants could not consent

17 on behalf of third parties listed in the "Employment" or "Contacts" section of the

18 application.  (ECF No. 39-1 at pp. 3, n. 4 & 14; ECF No. 61 at p. 8.)  Resolution of

19 this legal issue will generate a common answer likely to drive the resolution of the

20 litigation.

21 Defendant further maintains that class members may have different arguments

22 regarding "prior consent" because some putative class members, that is, those

23 individuals whose telephone numbers appear in the "Employment" or "Contacts"

24 section of the loan application, could also be loan applicants who had given their

25 prior consent to be contacted for debt collection.  (ECF No. 54 at pp. 11-14.)

26 Plaintiff responds by suggesting that the Court amend the class definition *sua sponte*

27 to exclude from the class any loan applicants, that is, those individuals whose

28 telephone number appears in the "Personal" section of a loan application.  (ECF No.

1    61 at p. 2, n. 2.)  Plaintiff's suggestion appears to resolve the concern that some class

2    members may also be applicants.  Therefore, this Court amends the class definition

3    *sua sponte* to include:

> 4    All persons whose 10-digit cellular telephone numbers with a
> 5    California area code were listed by an account holder in the
>      Employment and/or Contacts fields, **but were not listed in the**
> 6    **Personal fields**, of a California customer loan application produced to
> 7    [Defendant], which were called by [Defendant] using an ATDS and/or
>      an artificial or prerecorded voice for the purpose of collecting or
> 8    attempting to collect an alleged debt from the account holder, between
> 9    August 13, 2008 and August 13, 2012.

10   (amendment in bold).  With this amendment, this Court finds Defendant's arguments

11   about individualized issues with respect to "express prior consent" are no longer

12   valid.[2]  Therefore, this Court finds there are questions of law common to the class.

c.    <u>Typicality</u>

13

14   Again, by amending the class to exclude any individuals who are also loan

15   applicants, the Court finds that Plaintiff's claims that he was listed solely as a third

16   party contact on the loan application and thus did not give express prior consent are

17   typical of the issues of the remaining class members.

d.    <u>Adequacy</u>

18

19   Defendant argues that Plaintiff is an unsuitable representative because he has a

20   2000 felony conviction for sex with a minor.  (ECF No. 54 at pp. 22-23.)  The Court

21   disagrees.  First, Defendant fails to show how a conviction that is not for dishonesty,

22   theft, or fraud is in any way relevant to Plaintiff's integrity as a class representative.

23   Moreover, under Federal Rule of Evidence 403, it is highly unlikely that this

24   conviction would even be admissible at trial.  Even so, the age of the conviction and

25   the dissimilarity between the conviction and the determination as to Plaintiff's ability

26   to serve as a fiduciary leads this Court to find that Plaintiff is an adequate class

27

28   [2]    As discussed below, the Court finds *Gutierrez v. Barclays Grp.*, 2011 WL
     579238 (S.D. Cal. Feb. 9, 2011) to be distinguishable.

1    representative.

2    Defendant further argues that Plaintiff is not an adequate representative

3    because he has been inconsistent in stating the remedies he is seeking and his

4    "inconsistency may force potential class members to elect on potential remedies."

5    (*Id*. at p. 22.)  However, Plaintiff seeks both injunctive relief and monetary damages

6    in his Complaint (ECF No. 1 at p. 8) and Motion for Class Certification (ECF No. 39-

7    1 at pp. 19-20; ECF No. 39-16 at ¶10).  Plaintiff further understands his responsibility

8    to prosecute this case on behalf of the entire class.  (ECF No. 39-16 at ¶¶8, 10.)

9    Accordingly, the Court finds that Plaintiff is an adequate representative of the class.

10       **2.      *Because Plaintiff is Seeking Individualized Monetary Damages,***

11                 ***Certification Under Rule 23(b)(2) Is Not Appropriate***

12       Plaintiff seeks certification under both Rule 23(b)(3) and Rule 23(b)(2).  Since

13   Plaintiff is seeking individualized monetary claims and not solely injunctive relief,

14   certification is only proper under Rule 23(b)(3) as discussed below and not for final

15   injunctive relief under Rule 23(b)(2).  *See Connelly v. Hilton Grand Vacations Co.,*

16   *LLC*, 294 F.R.D. 574, 579 (S.D. Cal. 2013).  Therefore, Plaintiff's Motion for Class

17   Certification under Rule 23(b)(2) is **DENIED**.[3]

18       **3.      *Plaintiff Has Established "Predominance" and "Superiority"***

19                 ***Under Rule 23(b)(3)***

20       As discussed above, adjudication of the common issue of "express prior

21   consent" of an individual who is a third party to a loan application will help achieve

22   judicial economy in this case.  It does not make sense to adjudicate this issue in

23   thousands of smaller cases.

24       Defendant argues that, since individuals can, under certain circumstances,

25   provide prior express consent to be called at a telephone number other than their own,

26   class  certification  would  require  "mini-trials"  to  determine  the  third  party's

27   _____

28   [3]    Notably, Defendant represents all contacts to third party individuals listed in the
     loan applications have now ceased.

– 16 –                                          12cv1997

1    relationship with the loan applicant.   However, a quick look at the loan application

2    (ECF No. 39 at Exh. F) distinguishes the facts in this case from those in the cases

3    cited by Defendant.   In this case, the loan application requests telephone numbers

4    used by the loan applicant.   In a separate "Employment" field, the loan application

5    requests the name of the applicant's Employer, address and telephone number for the

6    Employer, name of the applicant's supervisor and telephone number of the

7    applicant's supervisor.   (*Id.*)   This is separate from the personal and work numbers

8    where the applicant identifies he can be reached.   *Cf. Gutierrez*, 2011 WL 579238, at

9    *1 (plaintiff listed his wife's cellular number as *his* home phone number on a credit

10   card application).   Similarly in the other "Contacts" field of the application, the

11   applicant is requested to list contacts, including "nearest relative not living with you"

12   and "landlord" including these individuals' telephone numbers.   This is separate from

13   the telephone numbers where the applicant can be reached.   Ultimately, this case can

14   resolve the legal issue as to whether this factual scenario was sufficient to allow the

15   Defendant to then reach out to these individuals assuming prior express consent.   The

16   overall factual scenario can be ascertained by looking at the loan application and this

17   predominates over any individual factual scenarios.   This is particularly true in light

18   of the Court's amendment of the class definition to exclude any individuals who were

19   actually loan applicants.

20       Defendant further argues that the plan for noticing the class is unworkable.

21   (ECF No. 54 at pp. 17-18.)   However, Plaintiff proposes using a reverse look-up to

22   identify class members.   (ECF No. 61 at p. 10.)   The loan application also identifies

23   names, telephone numbers and, in some cases, even addresses of putative class

24   members.   (*See* ECF No. 39 at Ex. F.)   Noticing the class members is not any more

25   unworkable than any other class involving thousands of members.

26       A class action is the superior method of proceeding in this case, particularly

27   since there is a common question that predominates regarding express prior consent

28   by a third party contact in a loan application.   Therefore, Plaintiff's Motion for Class

1   Certification under Rule 23(b)(3) is **GRANTED**.

2   **IV.     CONCLUSION**

3          For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN**

4   **PART** Plaintiff's Motion for Class Certification (ECF No. 39).    The Court

5   **GRANTS** Plaintiff's Motion for Class Certification under Rule 23(b)(3) with the

6   Court's modification to the class definition as discussed above, and **DENIES**

7   Plaintiff's Motion for Class Certification under Rule 23(b)(2).   The Court further

8   **DENIES** Defendant's *Ex Parte* Motion to Strike Plaintiff's Notice of Errata and

9   Declaration of Ilya Evdokimov in support thereof (ECF No. 47) and **DENIES**

10  Defendant's Motion to Strike the Report and Testimony of Ilya Evdokimov in

11  support of Plaintiff's Motion for Class Certification (ECF No. 51).

12          **IT IS SO ORDERED.**

13

14  **DATED:  September 5, 2014**

15                                                              Hon. Cynthia Bashant
                                                                United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28