1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

11

**SOUTHERN DISTRICT OF CALIFORNIA**

12

13

14

15

16

17

18

19

| | |
|---|---|
| PAUL STEMPLE, *individually and on behalf of all others similarly situated*,<br><br>                                  Plaintiff,<br><br>        v.<br><br>QC HOLDINGS, INC.,<br><br>                                  Defendant. | Case No. 12-cv-01997-BAS(WVG)<br><br>**ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF NATIONWIDE CLASS ACTION SETTLEMENT AND CERTIFICATION OF SETTLEMENT CLASS**<br><br>**[ECF No. 102]** |

20

21

22

23

24

        On August 13, 2012, Plaintiff Paul Stemple commenced this class action against Defendant QC Holdings, Inc. seeking relief for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). (ECF No. 1.) Plaintiff now moves unopposed for preliminary approval of a settlement reached between the parties and for certification of a settlement class. (ECF No. 102.)

25

26

27

28

        The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Nationwide Class Action Settlement and Certification of Settlement Class.

# I.      PROPOSED SETTLEMENT

## A.      Settlement Class

Following three years of litigation and attending multiple mediations, the parties have reached a proposed settlement of this matter ("Settlement"). (Settlement Agreement and Release ("Settlement Agreement") Recitals C, D, ECF No. 102-3.)[1] The Settlement applies to a proposed Settlement Class that is defined as follows:

> All persons or entities within the United States whose 10-digit cellular telephone numbers were listed by an account holder in the Employment and/or Contacts fields, but were not listed in the Personal fields, of a customer loan application produced to Defendant, and who were called by Defendant using an ATDS and/or an artificial or prerecorded voice for the purpose of collecting or attempting to collect an alleged debt from the account holder, between August 13, 2008 and August 13, 2012.

(*Id.* § 2.1.) The parties estimate this Settlement Class consists of 31,230 class members. (*Id.* § 2.2.) A Settlement Class Member is a person or entity who is encompassed by the Settlement Class and does not timely and properly opt out of the Settlement. (*Id.* § 1.30.) To represent the Settlement Class, the parties agree to seek appointment of Plaintiff as Class Representative and Plaintiff's counsel—Joshua B. Swigart of Hyde & Swigart, Abbas Kazerounian of Kazerouni Law Group, APC, and Todd M. Friedman of The Law Offices of Todd M. Friedman, P.C—as Class Counsel. (*Id.* § 3.2.)

## B.      Settlement Fund

Defendant denies that it has violated the TCPA or any other law, but it agrees to establish a Settlement Fund in the amount of $1,500,000 to pay for awards to Settlement Class Members, settlement administration expenses, and any reasonable attorneys' fees and costs approved and awarded by the Court. (Settlement Agreement Recital E, § 4.1.) After deducting class expenses, a pro rata share of the Settlement

---

[1] Capitalized terms used in this Order but not defined herein have the meanings ascribed to them in the Settlement Agreement.

12cv1997

Fund will be distributed by check to each Settlement Class Member who submits a claim to the third-party claims administrator. (*Id.* § 4.2.) If an award is approved but the resulting settlement check is not redeemed or is undeliverable, the award will be delivered to a *cy pres* recipient selected by the parties and approved by the Court. (*Id.* § 15.5.)

### C.    Notice to Settlement Class Members

The Settlement requires the Claims Administrator to provide three forms of notice to the Settlement Class Members. (Settlement Agreement § 9.) First, the Claims Administrator will provide notice via First Class U.S. Mail to all class members with known addresses. (*Id.* § 9.1.2, Ex. A.) The class members' addresses will be either provided by Defendant from its records or obtained through a reverse telephone number look-up. (*Id.* § 9.1.3.) The Mail Notice consists of an enlarged postcard that contains, among other things, a summary of the terms of the Settlement, instructions for submitting a claim, and directions for accessing the Settlement Website. (*Id.* § 9.1.5, Ex. A.)

Second, the Claims Administrator will create a website to provide information regarding the Settlement and to allow for online claim submission. (Settlement Agreement § 9.2.1.) The Settlement Website will provide access to the Mail Notice and also contain a notice in question and answer format that provides more detailed information about the release of claims contained in the Settlement, contacting the Court to object to the Settlement, and other matters. (*Id.* § 9.2, Ex. B.)

Third, notice will be provided by publication by (i) placing an advertisement in an issue of *USA Today* and (ii) sponsoring link and banner advertising on the internet for one month and for at least ninety million impressions—appearances of the advertisement on a webpage. (Settlement Agreement § 9.3, Ex. C.) A toll-free number will also be designated by the Claims Administrator on the various notices to allow class members to contact the Claims Administrator to inquire about the

settlement process. (*Id.* § 9.4)

### D.    Right to Opt Out or Object and Release of Claims

Settlement Class Members will have 130 days from the date of preliminary approval of the Settlement to opt out of the Settlement. (Settlement Agreement § 11.1) Class members may opt out by submitting an exclusion request by mail. (*Id.* § 11.2.) If 500 or more class members opt out of the Settlement, Defendant has the right to terminate the Settlement. (*Id.* § 11.4.) Class members will have the same time period to submit a written objection indicating their desire to object to the Settlement. (*Id.* 12.1.)

Upon final approval of the Settlement, all Settlement Class Members shall be deemed to have released and discharged Defendant from any and all claims that are known or unknown to the class members and relate to the this action. (Settlement Agreement § 16.)

### E.    Attorneys' Fees and Settlement Costs

As compensation for its services and to recover its expenses, Class Counsel will seek from the Court an award of attorneys' fees and litigation costs not to exceed $450,000 in attorneys' fees and $50,000 in litigation costs. (Settlement Agreement § 6.) Class Counsel will also seek from the Court a service award for Plaintiff in an amount not to exceed $5,000. (*Id.* § 7.) In addition to these expenses that are subject to the Court's approval, the parties anticipate $181,695 in claims administration costs. (*Id.* § 8.1.)

## II.    DISCUSSION

The Ninth Circuit maintains a "strong judicial policy" that favors the settlement of class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, Federal Rule of Civil Procedure 23(e) first "require[s] the

district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000) (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Where the "parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement." *Stanton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In these situations, settlement approval "requires a higher standard of fairness and a more probing inquiry than may normally be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (internal quotation marks omitted).

In this case, the Court previously certified a California-only class. (ECF No. 75 at 15:4–9.) The parties in reaching a settlement modified the certified class, however, by expanding it to include all persons or entities within the United States that satisfy the class criteria. (Settlement Agreement § 2.1.) The Court therefore reviews the class certification requirements to determine whether it is also appropriate to certify the Settlement Class.

## A.    Class Certification

Before granting preliminary approval of a class-action settlement, the Court must first determine whether the proposed class can be certified. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (indicating that a district court must apply "undiluted, even heightened, attention [to class certification] in the settlement context" in order to protect absentees).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 131 S.Ct. 2541, 2550 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). In order to justify a departure from that rule, "a class representative must be part of the class and 'possess the same interest and suffer the

same injury' as the class members." *Id.* (citing *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). In this regard, Rule 23 contains two sets of class-certification requirements set forth in Rule 23(a) and (b). *United Steel, Paper & Forestry, Rubber, Mfg. Energy, Allied Indus. & Serv. Workers Int'l Union v. ConocoPhillips Co.*, 593 F.3d 802, 806 (9th Cir. 2010). "A court may certify a class if a plaintiff demonstrates that all of the prerequisites of Rule 23(a) have been met, and that at least one of the requirements of Rule 23(b) have been met." *Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 443 (N.D. Cal. 2008).

"Rule 23(a) provides four prerequisites that must be satisfied for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) questions of law or fact exist that are common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Otsuka*, 251 F.R.D. at 443 (citing Fed. R. Civ. P. 23(a)). "A plaintiff must also establish that one or more of the grounds for maintaining the suit are met under Rule 23(b), including: (1) that there is a risk of substantial prejudice from separate actions; (2) that declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) that common questions of law or fact predominate and the class action is superior to other available methods of adjudication." *Id.* (citing Fed. R. Civ. P. 23(b)).

In the context of a proposed settlement class, questions regarding the manageability of the case for trial are not considered. *E.g.*, *Wright v. Linkus Enters., Inc.*, 259 F.R.D. 468, 474 (E.D. Cal. 2009) (citing *Amchem Prods., Inc.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial.")).

The Court considers the threshold issue of whether the Settlement Class is ascertainable and each of prerequisites for certification in turn below.

### 1.   Ascertainability

"As a threshold matter, and apart from the explicit requirements of Rule 23(a), the party seeking class certification must demonstrate that an identifiable and ascertainable class exists." *Mazur v. eBay, Inc.*, 257 F.R.D. 563, 567 (N.D. Cal. 2009). Certification is improper if there is "no definable class." *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 730 (9th Cir. 2007).

"A class should be precise, objective, and presently ascertainable," though "the class need not be so ascertainable that every potential member can be identified at the commencement of the action." *O'Connor v. Boeing N. Am. Inc.*, 184 F.R.D. 311, 319 (C.D. Cal. 1998) (internal quotation marks omitted). "A class is ascertainable if it is defined by 'objective criteria' and if it is 'administratively feasible' to determine whether a particular individual is a member of the class." *Bruton v. Gerber Prods. Co.*, No. 12-CV-02412-LHK, 2014 WL 2860995, at *4 (N.D. Cal. June 23, 2014). However, "[a] class definition is inadequate if a court must make a determination of the merits of the individual claims to determine whether a person is a member of the class." *Hanni v. Am. Airlines, Inc.*, No. C 08-00732, 2010 WL 289297, at *9 (N.D. Cal. Jan. 15, 2010). "It is not fatal for a class definition to require some inquiry into individual records, as long as the inquiry is not so daunting as to make the class definition insufficient." *Herrera v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 673 (N.D. Cal. 2011) (internal quotation marks omitted).

Here, the Court finds the Settlement Class is ascertainable because class members can be identified by reviewing records available to Defendant and conducting a reverse telephone number look-up. Defendant's agent who supplies Defendant's autodialing system provided a complete list of all calls made by Defendant using the autodialing system during the proposed class period. (Evlin Decl. ¶¶ 12–13, ECF No. 102-4) All of the unique cell phone numbers called by Defendant were extracted from this list. (Hansen Decl. ¶¶ 3–4, ECF No. 102-10.) Some of these numbers have address information associated with them from

1  Defendant's records, but almost all of them do not. (*Id.* ¶¶ 7–8.)

2  To solve this issue, the parties propose to have the Claims Administrator

3  perform a reverse telephone number look-up to determine the address information

4  for class members for whom address information is not available. (Settlement

5  Agreement § 9.1.3.) The Court finds this solution is acceptable, as the use of "reverse

6  look-up technology to identify" the class members "is an objective approach that

7  reinforces the ascertainability of the class." *Bee, Denning, Inc. v. Capital All. Grp.*,

8  310 F.R.D. 614, 623 (S.D. Cal. 2015) (citing *Booth v. Appstack, Inc.*, No. C13–

9  1533JLR, 2015 WL 1466247, at *4 (W.D. Wash. Mar. 30, 2015)). Thus, the Court

10  concludes the Settlement Class is ascertainable.

11

12  ### 2.    Numerosity – Rule 23(a)(1)

13  Rule 23(a)(1) requires that the class be "so numerous that joinder of all

14  members is impracticable." Fed. R. Civ. P. 23(a)(1). "[C]ourts generally find that the

15  numerosity factor is satisfied if the class comprises 40 or more members and will find

16  that it has not been satisfied when the class comprises 21 or fewer." *Celano v.*

17  *Marriott Int'l, Inc.*, 242 F.R.D. 544, 549 (N.D. Cal. 2007).

18  Here, the proposed Settlement Class consists of approximately 31,230 class

19  members. (Elvin Decl. ¶ 19; Settlement Agreement § 2.2.) The Court therefore finds

20  joinder of all class members is impracticable for the purposes of Rule 23(a)(1) and

21  the numerosity requirement is satisfied. *See Celano*, 242 F.R.D. at 549.

22

23  ### 3.    Commonality – Rule 23(a)(2)

24  Under Rule 23(a)(2), the named plaintiff must demonstrate that there are

25  "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).

26  "Commonality requires the plaintiff to demonstrate that the class members 'have

27  suffered the same injury[.]'" *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of Sw.*

28  *v. Falcon*, 457 U.S. 147, 157 (1982)). However, "[a]ll questions of fact and law need

not be common to satisfy this rule." *Hanlon*, 150 F.3d at 1019. "The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." *Id.*

In this case, Plaintiff alleges he was harmed when Defendant placed twelve calls to Plaintiff's cell phone in an attempt to collect an alleged debt owed by a person other than Plaintiff. (First Amended Complaint ("FAC") ¶ 12, ECF No. 107.) These calls were allegedly made via an "automatic telephone dialing system" ("ATDS") within the meaning of the TCPA and with the use of an "artificial or prerecorded voice" as prohibited by the TCPA. (*Id.*) Plaintiff did not consent to these calls. (*Id.* ¶ 18.) Plaintiff claims the proposed Settlement Class Members were similarly harmed when they were called for debt collection purposes by Defendant without their consent using an ATDS and artificial voice in violation of the TCPA. (*Id.* ¶¶ 20–22.)

Given this context, the Court finds there are questions of law and fact common to the Settlement Class Members. A common core of salient facts exists with respect to Defendant's alleged use of an ATDS and artificial voice to make unsolicited calls to persons or entities via their cell phone numbers for debt collection purposes. Class members also share a common legal issue: whether Defendant made these calls in violation of the TCPA. Accordingly, the commonality requirement is satisfied.

### 4.   Typicality – Rule 23(a)(3)

To satisfy Rule 23(a)(3), the named plaintiff's claims must be typical of the claims of the class. Fed. R. Civ. P. 23(a)(3). The typicality requirement is "permissive" and requires only that the named plaintiff's claims "are reasonably co-extensive with those of absent class members." *Hanlon*, 150 F.3d at 1020. "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quoting *Schwartz v. Harp*,

108 F.R.D. 279, 282 (C.D. Cal. 1985)). "[C]lass certification should not be granted if 'there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it.'" *Id.* (quoting *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990)).

Here, Plaintiff's and the unnamed class members' claims arise from the same alleged conduct of Defendant—unsolicited phone calls for debt collection purposes using an ATDS and artificial voice—and are based on the same legal theory—violation of the TCPA. The typicality requirement is therefore satisfied. *See, e.g.*, *Bee, Denning, Inc.*, 310 F.R.D. at 623 (concluding typicality requirement satisfied where plaintiff alleged she received the same or similar unsolicited fax advertisements as those sent to putative class members in violation of the TCPA); *Knutson v. Schwan's Home Serv., Inc.*, No. 3:12-cv-0964-GPC-DHB, 2013 WL 4774763, at *5 (S.D. Cal. Sep. 5, 2015) (finding typicality satisfied where plaintiffs asserted they received autodialed and/or prerecorded calls from defendants, "and the proposed class [was] defined to include individuals who received the same type of calls").

## 5.    Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires that the representative plaintiff "will fairly and adequately protect the interest of the class." Fed. R. Civ. P. 23(a)(4). "To satisfy constitutional due process concerns, absent class members must be afforded adequate representation before entry of a judgment which binds them." *Hanlon*, 150 F.3d at 1020 (citing *Hansberry v. Lee*, 311 U.S. 32, 42–43 (1940)). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Id.* (citing *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978)).

Here, there is no indication that Plaintiff and his counsel have a conflict of interest with the Settlement Class Members, and they appear to have vigorously investigated and litigated this action. (*See* Kazerounian Decl. ¶¶ 4–8, 27, ECF No. 102-2.) Thus, the interests of Plaintiff and the Settlement Class Members are aligned. In addition, Plaintiff's counsel are qualified in class-action litigation. They have handled numerous class actions focused on consumer protection, including matters involving the TCPA. (*Id.* ¶¶ 13–26; Swigart Decl. ¶¶ 6–11, ECF No. 102-7; Friedman Decl. ¶¶ 4–9, ECF No. 102-8.) Consequently, the Court finds Plaintiff and his counsel adequately represent the unnamed class members.

## 6.    Predominance and Superiority – Rule 23(b)(3)

### (i)    Predominance

"The predominance inquiry focuses on 'the relationship between the common and individual issues' and 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009) (citing *Hanlon*, 150 F.3d at 1022). The focus of the inquiry is not the presence or absence of commonality as it is under Rule 23(a)(2). Instead, the predominance requirement ensures that common questions "present a significant aspect of the case" such that "there is clear justification"—in terms of efficiency and judicial economy—for resolving those questions in a single adjudication. *Hanlon*, 150 F.3d at 1022; *see also Vinole*, 571 F.3d at 944 ("[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy.")

Here, the Court finds a common issue predominates over any individual issue—specifically, whether Defendant's alleged practice of using an ATDS to call the Settlement Class Members' cell phone numbers without their consent violated the TCPA. A potential pitfall for parties seeking to satisfy the predominance requirement in a TCPA action is whether an individualized inquiry will be necessary

to determine if class members consented to the automated phone calls. *See, e.g.*, *Connelly v. Hilton Grand Vacations Co., LLC*, 294 F.R.D. 574, 578 (S.D. Cal. 2013) (holding predominance requirement not satisfied where the context of class members' interactions with the defendant was sufficiently varied to require individual evaluation of whether express consent was provided). The Court previously addressed this concern in certifying a California-only class by adopting Plaintiff's suggestion to exclude cell phone numbers that belonged to loan applicants—i.e., customers of Defendant's short-term loan business. (ECF No. 75 at 14:21–15:12.) Because the parties have also excluded cell phone numbers belonging to loan applicants in the expanded Settlement Class, this concern is similarly addressed here. Accordingly, the Court finds the predominance requirement is met.

### (ii)   Superiority

"Plaintiffs must also demonstrate that a class action is 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *Otsuka*, 251 F.R.D. at 448 (quoting Fed. R. Civ. P. 23(b)(3)). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234–35 (9th Cir. 1996). The following factors are pertinent to this analysis:

> (A) the class members' interest in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

//

1       A class action is a superior method for adjudicating the claims presented in

2   this case because of the relatively low value of the average class member's potential

3   action against Defendant. The TCPA provides for $500 or the actual monetary loss

4   in damages for each violation and treble damages for each willful or knowing

5   violation. 47 U.S.C. § 227(b)(3). The cost a Settlement Class Member would have to

6   incur to bring an individual action against Defendant very likely outweighs the

7   prospective recovery of the class member. This disparity between litigation costs and

8   prospective recovery provides "the most compelling rationale for finding superiority

9   in a class action." *Smith v. Microsoft Corp.*, 297 F.R.D. 464, 468–69 (S.D. Cal. 2014)

10  (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996)). Moreover,

11  the Court is unaware of any other litigation regarding the claims at issue involving

12  Defendant and the parties agree it is desirable to resolve the class members' claims

13  in this forum. Thus, the superiority requirement is satisfied.

14      For the foregoing reasons, the Court provisionally finds the prerequisites for a

15  class action under Rule 23 of the Federal Rules of Civil Procedure have been met for

16  the Settlement Class.

17

18      **B.**    **Preliminary Fairness Determination**

19      Having certified the Settlement Class, the Court must next make a preliminary

20  determination of whether the class-action settlement is "fair, reasonable, and

21  adequate" pursuant to Rule 23(e)(2). "It is the settlement taken as a whole, rather than

22  the individual component parts, that must be examined for overall fairness." *Hanlon*,

23  150 F.3d at 1026. A court may not "delete, modify or substitute certain provisions"

24  of the settlement; rather, "[t]he settlement must stand or fall in its entirety." *Id.*

25  Relevant factors to this determination include, among others:

26  //

27  //

28  //

the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class-action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Id.*; *see also Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Preliminary approval of a settlement and notice to the proposed class is appropriate if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citations omitted).

Here, the proposed Settlement complies with all of these requirements. The Court addresses the relevant factors in further detail below.

### 1.  Strength of the Plaintiffs' Case and Risk of Further Litigation

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n of the City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). As explained by the Supreme Court, "[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).

Although each party here strongly believes in the merits of the party's side of the case, the parties have agreed to settle the matter in light of the risks to both sides in continuing this matter through trial. (*See* Settlement Agreement Recitals D–F;

Kazerounian Decl. ¶¶ 11–12.) Plaintiff and Class Counsel in particular recognize prosecuting this matter "through trial would be protracted, burdensome, and expensive." (Kazerounian Decl. ¶ 11.) One court, in discussing a large proposed settlement in a TCPA action at length, adopted a report concluding that "the average TCPA case carries a 43% chance of success." *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 806 (N.D. Ill. 2015). Plaintiff and the class members would similarly face a substantial risk of being unsuccessful at trial here. Moreover, preparing this matter for trial would indeed be burdensome and expensive. Thus, the Court agrees with the parties that the proposed Settlement eliminates litigation risks and ensures that the Settlement Class Members receive some compensation for their claims, and this factor weighs in favor of approving the Settlement.

### 2.    Amount of the Proposed Settlement

The Settlement provides for a Settlement Fund of $1,500,000. (Settlement Agreement § 4.1.) Offsetting this amount are anticipated notice and claims administration expenses in the amount of $181,695; an incentive award up to $5,000; litigation costs up to $50,000; and attorneys' fees up to $450,000. (*Id.* §§ 6–8.) The parties estimate three percent of the Settlement Class Members will submit a valid claim to the Claims Administrator. (ECF No. 102-1 at 12:22, fn. 4.) Assuming the anticipated expenses are incurred and the claims participation rate is correct, each Settlement Class Member who submits a claim will receive approximately $868 from the Settlement Fund. (*Id.*)

Although the TCPA provides for statutory damages of only $500 for each negligent violation and $1,500 for each willful violation, 47 U.S.C. § 227(b)(3), Defendant potentially contacted many of the 31,230 Settlement Class Members in violation of the TCPA multiple times. Plaintiff, as an example, alleges he received approximately twelve calls from Defendant. (FAC ¶ 16.) Thus, given the potential for numerous violations per Settlement Class Member, the amount of the Settlement

Fund is only a small percentage of the potential recovery that might be available to the class at trial. Yet, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (internal quotation marks omitted). Moreover, in comparing the Settlement to settlements approved in comparable cases, the amount of the Settlement Fund appears appropriate in light of the claims rate anticipated by the parties. (*See* ECF No. 102-6 (containing matrix of TCPA class action cases with information regarding class size, settlement amount, and claims rates)). Therefore, under the circumstances, the Court concludes that the amount offered in the Settlement weighs in favor of preliminary approval.

### 3.   Extent of Discovery Completed and Stage of the Proceedings

The Court assesses the stage of proceedings and the amount of discovery completed to ensure the parties have an adequate appreciation of the merits of the case before reaching a settlement. *See Ontiveros v. Zamora,* 303 F.R.D. 356, 371 (E.D. Cal. 2014) ("A settlement that occurs in an advanced stage of the proceedings indicates that the parties carefully investigated the claims before reaching a resolution."). So long as the parties have "sufficient information to make an informed decision about settlement," this factor will weigh in favor of approval. *Linney v. Cellular Alaska P'ship,* 151 F.3d 1234, 1239 (9th Cir. 1998); *see also In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (explaining that a combination of investigation, discovery, and research conducted prior to settlement can provide sufficient information for class counsel to make an informed decision about settlement).

The advanced stage of the proceedings in this case also weighs significantly in favor of approval of the Settlement. The parties engaged in pre-certification discovery and litigated a number of discovery issues. (*See* Order on Discovery

Disputes, ECF No. 21.) Thereafter, the Court granted Plaintiff's motion for class certification of a California-only class. (ECF No. 75.) Defendant sought reconsideration of the Court's decision, but Defendant's request was denied. (ECF Nos. 78, 89.) Defendant also unsuccessfully sought leave to appeal the class certification order. (ECF No. 92.)

Following certification of a California-only class, Plaintiff conducted additional discovery. (Kazerounian Decl. ¶ 5.) The parties also attended an all-day mediation presided over by the Honorable Leo S. Wagner (Ret.) and a part-day mediation with the Honorable Leo S. Papas (Ret.). (*Id.* ¶ 6; *see also* Settlement Agreement Recital D.) With the guidance of Judge Papas, the parties ultimately reached the Settlement. (Kazerounian Decl. ¶ 6.) Given the discovery conducted, the stage of the proceedings, and the evidence of significant arms-length negotiations following certification of a California-only class, the Court concludes that this factor weighs significantly in favor of preliminary approval of the Settlement.

## 4. Experience and Views of Counsel

As mentioned above, Class Counsel have significant experience in handling class actions. (Kazerounian Decl. ¶¶ 13–26; Swigart Decl. ¶¶ 6–11; Friedman Decl. ¶¶ 4–9.) For example, one of Class Counsel has been involved in at least twenty-two TCPA class actions. (Swigart Decl. ¶ 8.) As for their opinions of the Settlement, Class Counsel believe the Settlement is desirable, fair, and beneficial to the Settlement Class. (Kazerounian Decl. ¶ 11.) "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979). Accordingly, giving the appropriate weight to Class Counsel's recommendation, the Court concludes that this factor also weighs in favor of approval.

//

//

### 5.    Reaction of the Class to the Settlement

Plaintiff, aside from his own view, provides no evidence regarding any putative Settlement Class Members' reactions to the proposed settlement—presumably because no other class members have been informed of the proposed Settlement. The proposed Mail Notice, Website Notice, and Publication Notice provide instructions as to how class members may object to the Settlement, contact the Court regarding the Settlement, and request to appear at the Fairness Hearing. (Settlement Agreement Exs. A–C.) Accordingly, the Court will further consider this factor at the Fairness Hearing before granting final approval of the Settlement.

On balance, the Court finds the Settlement falls within the range of reasonableness meriting possible final approval. The Court therefore preliminarily approves the Settlement and the terms and conditions set forth in the Settlement Agreement, subject to further consideration at the Fairness Hearing.

### C.    Proposed Class Notice

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

> The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 12(c)(2)(B). "[T]he mechanics of the notice process are left to the

discretion of the court subject only to the broad 'reasonableness' standards imposed by due process." *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975).

Here, the proposed notices describe the litigation, the terms of the Settlement, and each class member's rights and options under the Settlement. (Settlement Agreement Exs. A–C.) As outlined above, the Claims Administrator will distribute the Mail Notice and establish the Settlement Website containing the Website Notice. (*Id.* §§ 9.1, 9.2.) A Publication Notice will also be disseminated. (*Id.* § 9.3.) All of the notices state the deadlines for opting out or objecting to the Settlement, and the Mail Notice and Publication Notice direct class members to the Settlement Website for additional information. (*Id.*) The Settlement Administrator will also operate a toll-free telephone number for Settlement Class Members to call for more information about the Settlement. (*Id.* § 9.4.)

Having reviewed the proposed class notices, the Court finds that the methods and contents of the notices comply with due process and Rule 23, are the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled to notice of the Settlement. Therefore, the Court approves the form and content of the proposed notices to be provided to the Settlement Class Members as set forth in Section 9 of the Settlement Agreement and Exhibits A through C to the Settlement Agreement.

## II.   CONCLUSION & ORDER

In light of the foregoing, the Court **GRANTS** Plaintiff's Motion for Preliminary Approval of Nationwide Class Action Settlement and Certification of Settlement Class (ECF No. 102). Accordingly, the Court hereby **ORDERS** the following:

(1)   Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Court hereby conditionally certifies the following class for settlement purposes only:

> All persons or entities within the United States whose 10-digit cellular telephone numbers were listed by an account holder in the Employment and/or Contacts fields, but were not listed in the Personal fields, of a customer loan application produced to Defendant, and who were called by Defendant using an ATDS and/or an artificial or prerecorded voice for the purpose of collecting or attempting to collect an alleged debt from the account holder, between August 13, 2008 and August 13, 2012.

**(2)** The Court hereby appoints Plaintiff as Class Representative of the Settlement Class.

**(3)** The Court hereby appoints Joshua B. Swigart of Hyde & Swigart, Abbas Kazerounian of Kazerouni Law Group, APC, and Todd M. Friedman of The Law Offices of Todd M. Friedman, P.C as Class Counsel to represent the Settlement Class.

**(4)** The Court hereby preliminarily approves the Settlement Agreement and the terms and conditions of the Settlement set forth therein, subject to further consideration at the Fairness Hearing.

**(5)** The Court will hold a Fairness Hearing on **Monday, November 7, 2016**, at **10:30 a.m.**, in the Courtroom of the Honorable Cynthia Bashant, United States District Court for the Southern District of California, Courtroom 4B (4th Floor - Schwartz), 221 West Broadway, San Diego, CA 92101, for the following purposes:

**(a)** finally determining whether the Settlement Class meets all applicable requirements of Rule 23 of the Federal Rules of Civil Procedure, and thus, whether the claims of the Settlement Class should be certified for purposes of effectuating the Settlement; determining whether the proposed Settlement of the action on the terms and conditions provided for in the Settlement Agreement is fair, reasonable, and adequate and should be approved by the Court;

**(b)** considering any motion of Class Counsel for an award of attorneys' fees and costs;

**(c)** considering the motion of the Plaintiff for a service award, if any;

**(d)** considering whether the Court should enter the [Proposed] Final Judgment and Order of Dismissal with Prejudice;

           (e)     considering whether the releases by the Settlement Class Members as set forth in the Settlement Agreement should be provided; and

           (f)     ruling upon such other matters as the Court may deem just and appropriate.

    **(6)**    The Court may adjourn the Fairness Hearing and later reconvene such hearing without further notice to the Settlement Class Members.

    **(7)**    Any motion in support of the Settlement and any motion for an award of attorneys' fees and costs or Plaintiff's service award, if any, must be filed with the Court no later than **August 15, 2016**. Any opposition must be filed no later than fourteen days after the motion is filed, and any reply must be filed no later than twenty-eight days after the motion is filed.

    **(8)**    The Court appoints Kurtzman Carlson Consultants ("KCC") to serve as the Claims Administrator for the Settlement.

    **(9)**    The Claims Administrator shall carry out all duties set forth in the Settlement Agreement in the manner provided in the Settlement Agreement.

    **(10)**    The costs and expenses related to claims administration shall be paid from the Settlement Fund in accordance with the applicable provisions of the Settlement Agreement.

    **(11)**    All Settlement Class Members shall be bound by all determinations and judgments in this action concerning the Settlement, whether favorable or unfavorable to the Settlement Class.

    **(12)**    Any Settlement Class Member may enter an appearance in this action, at his or her own expense, individually or through counsel. All Settlement Class Members who do not enter an appearance will be represented by Class Counsel.

    **(13)**    Any person—including any entity via its authorized representative when applicable throughout this Order—falling within the definition of the Settlement Class may, upon request, be excluded from the Settlement Class. This procedure is also referred to as "opting out" of the Settlement Class. Any person

wishing to be excluded from the Settlement Class must submit a written "Exclusion Request" to the Claims Administrator postmarked or delivered no later than 130 calendar days after the date of entry of this Order ("Exclusion Deadline"). The Exclusion Request must include: (a) the name of this case and its number: *Stemple v. QC Holdings, Inc*., Case No. 3:12-cv-01997-BAS(WVG) (S.D. Cal.); (b) the person's name; (c) the person's address; (d) the person's telephone number; (e) the person's signature; and (f) a statement that the person is a class member and that he or she wishes to be excluded from the Settlement. Exclusion Requests purportedly filed on behalf of groups of persons are prohibited and will be deemed to be void. An Exclusion Request must be written and may not be asked for telephonically or by email.

**(14)**   Any class member who does not send a completed, signed Exclusion Request with the information listed in Paragraph 13 above to the Claims Administrator postmarked or delivered on or before the Exclusion Deadline will be deemed to be a Settlement Class Member for all purposes and will be bound by all further orders of the Court in this Action and by the terms of the Settlement, if finally approved by the Court. All persons who submit valid and timely Exclusion Requests in the manner set forth in this Paragraph and Paragraph 13 above shall have no rights under the Settlement and shall not be bound by the Settlement Agreement or the Final Judgment and Order of Dismissal with Prejudice approving the Settlement, if issued.

**(15)**   No later than fourteen calendar days after the Exclusion Deadline, the Claims Administrator shall cause to be filed with the Court a list reflecting all Exclusion Requests.

**(16)**   Any Settlement Class Member who desires to object either to the Settlement, the award of Class Counsel's fees and costs, or Plaintiff's service award, if any, must timely file with the Clerk of this Court and timely serve on the parties' counsel identified below by hand or first-class mail a notice of the objection(s) and proof of membership in the Settlement Class and the grounds for such objections,

together with all papers that the Settlement Class Member desires to submit to the Court no later than the deadline as set forth in the class notices, which is 130 calendar days after the date of entry of this Order ("Objection Deadline"). Settlement Class Members may not both object and request exclusion from the Settlement. If a Settlement Class Member submits both an Exclusion Request and an objection, the Exclusion Request will be controlling. To be considered by the Court, the objection must also contain all of the information listed in Paragraph 17 below. The Court will consider such objection(s) and papers only if such papers are received on or before the Objection Deadline by the Clerk of the Court and by Class Counsel and Defendant's counsel. Such papers must be sent to each of the following persons:

U.S. District Court

Southern District of California

Office of the Clerk

333 West Broadway, Suite 420

San Diego, CA 92101

HYDE & SWIGART

Joshua B. Swigart, Esq.

2221 Camino Del Rio South

Suite 101

San Diego, CA 92108

SHOOK HARDY & BACON LLP

Rebecca J. Schwartz, Esq.

2555 Grand. Blvd.

Kansas City, MO 64108

(17)   All objections must include: (a) the name of this case and its number: *Stemple v. QC Holdings, Inc.*, Case No. 3:12-cv-01997-BAS(WVG) (S.D. Cal.); (b) the objector's full name, telephone number, and address; (c) if represented by counsel, the full name, telephone number, and address of all counsel; (d) all of the reasons for his or her objection; (e) whether the objector intends to appear at the Fairness Hearing on his or her own behalf or through counsel; (f) a statement that the objector is a class member; and (g) the objector's signature. Any documents supporting the objection must also be attached to the objection. If any testimony is to be given in support of the objection, the names of all persons who will testify must be set forth in the objection.

(18)   All objections must be filed with the Clerk and served on the parties' counsel no later than the Objection Deadline. Objections that do not contain all required information or are received after the Objection Deadline will not be considered at the Fairness Hearing.

(19)   Attendance at the Fairness Hearing is not necessary; however, any Settlement Class Member wishing to be heard orally with respect to approval of the Settlement, the motion for an award of Class Counsel's fees and costs, or the motion for Plaintiff's service award, if any, is required to provide written notice of his or her intention to appear at the Fairness Hearing no later than the Objection Deadline by filing a "Notice of Intention to Appear." The Notice of Intention to Appear must include the Settlement Class Member's name, address, telephone number, and signature and must be filed and served as described in Paragraph 16 of this Order. Settlement Class Members who do not oppose the Settlement, the motion for an award of Class Counsel's fees and costs, or the motion for Plaintiff's service award, if any, need not take any action to indicate their approval. A person's failure to submit a written objection in accordance with the Objection Deadline and the procedure set forth in the class notices waives any right the person may have to object to the Settlement, the award of Class Counsel's fees and costs, or Plaintiff's service award,

if any, or to appeal or seek other review of, if issued, the Final Judgment and Order of Dismissal with Prejudice approving the Settlement.

**(20)**   The parties are ordered to carry out the Settlement Agreement in the manner provided in the Settlement Agreement.

**IT IS SO ORDERED.**

**DATED: April 25, 2016**

**Hon. Cynthia Bashant**
**United States District Judge**