# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL STEMPLE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>QC HOLDINGS, INC.,<br><br>　　　　　Defendant. | Case No. 12-cv-1997-BAS-WVG<br><br>**ORDER GRANTING MOTION FOR A CY PRES DISTRIBUTION FROM THE RESIDUAL SETTLEMENT FUND AND PAYMENT OF ADDITIONAL ADMINISTRATIVE EXPENSES**<br><br>**[ECF No. 118]** |

On November 7, 2016, the Court granted Plaintiff's Motion for Final Approval of Class Action Settlement. (ECF No. 113.) As part of this settlement, Defendant agreed to establish a Settlement Fund in the amount of $1,500,000 to pay for awards to Settlement Class Members, settlement administration expenses, and any reasonable attorneys' fees and costs approved and awarded by the Court. After deducting class expenses, a pro rata share of the Fund was to be distributed to the settlement class members. (*Id.* at 2.) The claims administrator was to pay each Settlement Class Member their pro rata share of the Settlement Fund, or approximately $1,208 each. (*Id.* at 2, 7.)

On August 28, 2018, Plaintiff filed an Ex Parte Application For Approval of

1  Settlement Distribution Plan. (ECF No. 116.) Plaintiff requested modification of the
2  settlement plan due to certain Internal Revenue Service requirements. The Court
3  granted Plaintiff's motion and amended its previous final approval order. (ECF No.
4  117.)

5  On August 7, 2018, Plaintiff filed the present Motion, moving for an order
6  approving a *cy pres* distribution of the uncashed checks that remain in the Settlement
7  Fund. (ECF No. 118.) After the Court approved the settlement plan, the settlement
8  administrator issued a total of 958 settlement checks. For any checks returned as
9  undeliverable, the administrator searched for a valid address and re-mailed the check
10 to that address. A total of 91 checks were not cashed, and therefore a balance of
11 $66,024.52 remains in the Fund. (*Id.* at 2.) Of this balance, Plaintiff requests
12 $8,994.98 be paid to the claims administrator Kurtzman Carson Consultants for
13 recent administration expenses. (*Id.* at 4.) Plaintiff requests the remainder be
14 delivered to New Media Rights as a *cy pres* recipient. (*Id.*)[1] "New Media Rights
15 was founded in 2006 and is a program at California Western School of Law that
16 offers pro bono preventative privacy related legal services for consumers, nonprofits,
17 technology entrepreneurs, and creators across the United States." (*Id.*)

18 "[T]he '*cy pres* doctrine allows a court to distribute unclaimed or non-
19 distributable portions of a class action settlement fund to the 'next best' class of
20 beneficiaries.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (quoting
21 *Nachshin v. AOL, LLC,* 663 F.3d 1034, 1036 (9th Cir. 2011)). "*Cy pres* distributions
22 must account for the nature of the plaintiffs' lawsuit, the objectives of the underlying
23 statutes, and the interests of the silent class members, including their geographic
24 diversity." *Nachshin*, 663 F.3d at 1036 (citing *Six Mexican Workers*, 904 F.2d at

---

[1] The Parties' settlement agreement states that any funds from uncashed settlement checks shall be delivered to a *cy pres* recipient. (ECF No. 102-3, at § 15.5.) This includes settlement checks to Settlement Class Members who submitted valid claim forms but whose current valid address could not ultimately be determined. (*Id.*)

1307–08). A *cy pres* distribution is inappropriate if it "benefits a group far too remote from the plaintiff class." *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1308 (9th Cir. 1990). The distribution must "best effectuate" the goals and interests of the class members. *Id.* at 1309.

     Here, Plaintiff states New Media Rights is a proper *cy pres* recipient. In his Complaint, Plaintiff alleged he and the putative class members received debt collection calls from Defendant who used an "artificial or prerecorded voice." (ECF No. 118, at 7 (citing ECF No. 1, ¶¶ 12–16, 21).) Plaintiff alleged this violates the Telephone Consumer Protection Act ("TCPA"). "The purpose of the TCPA is to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Aboudi v. T-Mobile USA, Inc.*, No. 12CV2169 BTM NLS, 2015 WL 4923602, at *5 (S.D. Cal. Aug. 18, 2015) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)).

     New Media Rights ("NMR") "assists internet users in understanding their rights regarding unwanted text messages, emails, and phone calls under the TCPA and related privacy laws." (ECF No. 113, at 7 (citing ECF No. 118-6, Declaration of Art Neill ("Neill Decl."))). NMR also educates technology enterprises "on how to comply with privacy laws in a consumer friendly way" and "hosts very well-trafficked resources on privacy laws through [its] website." (Neill Decl., at 2.) Further, NMR "has been a moving force in redrafting portions of the TCPA." (ECF No. 113, at 7.) Plaintiff cites two cases where courts in this district approved NMR as a *cy pres* recipient in TCPA class action settlements. *See Barani v. Wells Fargo Bank, N.A.*, No. 12-cv-2999-GPC-KSC (S.D. Cal.), (ECF No. 45); *Couser v. Comenity Bank*, No. 3:12-cv-02484-MMA-BGS (S.D. Cal.), (ECF No. 98).

     The Court finds NMR is an appropriate recipient of the unclaimed settlement funds. Distribution of funds to NMR would "account for the nature of [Plaintiff's]

lawsuit, the objectives of the underlying statutes, and the interests of the silent class members." *See Lane*, 696 F.3d at 819. Further, even though the program was founded in San Diego, the program has a nationwide impact. (*See* Neill Decl., at 2 (stating NMR provides "pro bono preventative privacy related legal services for consumers, nonprofits, technology entrepreneurs, and creators across the United States").) *Cf. Nachshin*, 663 F.3d at 1040 (disapproving of *cy pres* distribution in part because the settlement class was nationwide yet "two-thirds of the donations [would] be made to local charities in Los Angeles").

For the foregoing reasons, the Court **GRANTS** Plaintiff's Motion (ECF No. 118). The Court **ORDERS** that $8,994.98 of the Settlement Fund be paid to the claims administrator Kurtzman Carson Consultants. The Court further **ORDERS** that New Media Rights be designated the *cy pres* beneficiary of the remaining balance of the Settlement Fund and that the remaining balance of the Fund be distributed to New Media Rights.

**IT IS SO ORDERED.**

**DATED: August 29, 2018**

Hon. Cynthia Bashant
United States District Judge